**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, and ALLSTATE COUNTY MUTUAL INSURANCE COMPANY,** | § § § § § § § § | |
| *Plaintiffs,* | § § § | |
| v. | § | **Civil Action No. 1:26-CV-543-ADA-M** |
| | § § | |
| **KHIT CHIROPRACTIC AND REHABILITATION, PLLC, KHIT & ASSOCIATES, PLLC D/B/A KHIT CHIROPRACTIC & WELLNESS CENTER, SKAK INVESTMENTS, LLC D/B/A INSIGHT DIAGNOSTIC AND IMAGING CENTER, LLC, INSIGHT IMAGING CENTER, LLC, KAY MEDICAL CENTER, PLLC, SPINAL DECOMPRESSION AND REMODELING CLINIC, PLLC, ELKAY ENTERPRISES, LLC D/B/A ELKAY TRANSPORT, IMPACT PROFESSIONAL SERVICES, LLC, KHIT PROPERTY MANAGEMENT, LLC, MIGUEL ONETO, M.D., P.A. D/B/A QI & INTERVENTIONS, LUIS KHIT, D.C., ALEJANDRA KHIT, D.C., ANNA GITTINS, ARTURO RESENDEZ, SUSAN FAN, M.D., MIGUEL ONETO, M.D., JULIETA ONETO, M.D., SANNICHIE QUAICOE, M.D., WILLIAM DONOVAN, M.D., JOSE NADAL, D.C., LIBRADO TORRES, D.C., JOHN GLADE, D.C., LIZ MOLINA, D.C., REYNALDO AMADOR, D.C., DEBBIE RIVERA, D.C., AND JONATHAN HERNANDEZ, D.C.,** | § § § § § § § § § § § § § § § § § § § § § § § § § § | |
| *Defendants.* | § § | |

## DEFENDANTS' MOTION TO DISMISS

Defendants Susan Fan, M.D., Julieta Oneto, M.D., Miguel Oneto, M.D., and Miguel Oneto, M.D., P.A. d/b/a QI & Interventions (collectively, the "Teleradiologists") move to dismiss all federal causes of action Allstate has filed against them because pursuant to Rule 12(b)(6) the Complaint fails to plead facts showing that the Teleradiologists participated in the operation or management of the alleged enterprise, and further fails to allege any predicate act of the Teleradiologists' mail fraud under 18 U.S.C. § 1341 with the particularity required by Rule 9(b). Defendant Teleradiologists also move to dismiss all state-law claims for lack of subject-matter jurisdiction under Rule 12(b)(1), and pursuant to 12(b)(6) as Allstate fails to adequately plead essential elements of the Texas state-law claims. Oral argument is requested.

## I. BACKGROUND

1. Plaintiffs are insurance companies affiliated with Allstate Insurance Company (collectively, "Allstate"). *See* Compl. (ECF No. 1) at ¶¶ 16-20; 350. In this lawsuit, Allstate has sued the Teleradiologists, and eighteen other entities and individuals (the "Other Defendants"), for operating a Racketeer Influenced and Corrupt Organizations Act ("RICO") enterprise in violation of 18 U.S.C. § 1962(c), and for state-law claims of fraud, conspiracy, unjust enrichment and money had and received. *Id.* at ¶¶ 414-22; 423-28; 429-35; and 436-39.

2. Defendant Susan Fan, M.D. is a board-certified diagnostic radiologist licensed to practice medicine in Texas since 1990. *Id.* at ¶ 37. Dr. Fan completed a fellowship in Body Imaging at Baylor College of Medicine and is also licensed to practice in Arizona and California.[1] Ex. A at 23:03-25. Defendant Julieta Oneto, M.D. is a board-certified diagnostic and pediatric radiologist

[1] Attached as Exhibit A, and incorporated by reference as if fully restated, is a copy of pages from the deposition transcript of Susan Fan, M.D. referred to in the Complaint and cited in this Motion.

licensed to practice medicine in Texas since 2008, completed a fellowship in Pediatric Radiology, and has also been licensed to practice in Florida since 2007. Ex. B 18:21-19:02. Defendant Miguel Oneto, M.D. is a board-certified diagnostic radiologist licensed to practice medicine in Texas since 2002.[2] Ex. B at 06:05-17. Dr. Miguel Oneto completed fellowships in Vascular & Interventional Radiology and Breast Imaging and has also been licensed to practice in Florida since 1999, as well as five other states. Ex. B at 07:04-14; 88:15-89:01.

3. Defendant Miguel Oneto, M.D., P.A. d/b/a QI & Interventions ("QI & I") is a Texas professional association owned by Dr. Miguel Oneto and Dr. Julieta Oneto. *Id.* at ¶ 35; Ex. B at 14:25-15:07. Dr. Susan Fan, Dr. Julieta Oneto, and Dr. Miguel Oneto provided teleradiology services and prepared medical documentation for QI & I during the period at issue. ECF No. 1 at ¶¶ 35-37. After reviewing the imaging in the QI & I PACS (Picture Archiving and Communications System), the radiologists dictated findings into report templates before finalizing their reports for electronic delivery to QI & I customers, the medical providers ordering the studies. *Id.* at ¶¶ 35-37; 209; Ex. A at 13:08-24, 15:02-24, 37:01-23; Ex. B at 59:18-61:05.

4. Allstate alleges separate Defendant SKAK Investments d/b/a Insight Diagnostic and Imaging Center, LLC ("Insight") contracted with QI & I and other radiology groups for remote interpretation of x-rays, CT, and MRI scans. *See* ECF No. 1 at ¶¶ 121; 389(l)-(m). Exhibit C to this Motion is one such standard form QI & I agreement, the Teleradiology Services Agreement with QI & I (the "Contract"). Ex. B at 28:03-05. Per this nonexclusive Contract, Insight, not QI & I, was "responsible for and shall handle all aspects of patient billing and collections," while Insight paid QI & I a flat fee per-study of around $10 per x-ray and $50 per MRI. *Id.* at ¶¶ 174, 208, n. 32;

[2] Attached as Exhibit B, and incorporated by reference as if fully restated, is a copy of pages from the deposition transcript of Miguel Oneto, M.D. referred to in the Complaint and this Motion.

Ex. B at 50:04-12; Ex. C.

5. In this lawsuit, Allstate complains it paid too much to settle unliquidated, disputed bodily injury claims after claimants' counsel submitted demand packages containing radiology reports signed by the Teleradiologists along with bills generated by Other Defendants. ECF No. 1 at ¶ 2. Tellingly, Allstate is not suing any of the attorneys who sent the demand packages or the patients who made the claims, nor does it seek to rescind any allegedly fraud-induced settlements.

6. Instead, Allstate attempts to recover from physicians who merely provided professional radiology interpretations services for a flat fee under a teleradiology services agreement, with no role in settlement presentment. Yet, Allstate does not complain that the Teleradiologists' reports were inaccurate, or that the Contracted fees charged by QI & I which are consistent with prevailing reimbursement rates under Medicare, Medicaid, and other major medical insurance programs are unreasonable in any way. Rather, Allstate's theory is that, by providing detailed reports with precise descriptions of patient findings, the Teleradiologists' reports were *too* precise. Allstate's own allegations show the Teleradiologists only interpreted the imaging studies they received as independent contractors with Insight. Nobody with QI & I ever participated as medical directors for Insight, and the Teleradiologists had no role within Insight or its affiliates. Ex. B at 27:05-11. The Teleradiologists were not involved in attorney marketing, patient recruitment, treatment decisions, transportation, global billing, or operation of the alleged Khit entities beyond furnishing radiology reads and signing reports that later appeared in demand packages sent to Allstate by claimants' counsel. ECF No. 1, at ¶¶ 1, 3, 9, 57-58, 121, 240-50, 360, 389(c), 389(p). That is not enough to state a RICO claim, a fraud claim, or any other claim Allstate brings against the Teleradiologists.

7. Accordingly, the RICO causes of action asserted against the Teleradiologists

should be dismissed in their entirety because the Complaint does not plausibly allege the Teleradiologists managed or directed the alleged enterprise. Nor does Allstate allege that the Teleradiologists failed to review the imaging, that the imaging interpretations were never performed, that reading and interpreting the studies was medically unnecessary, nor that the interpretations were inaccurate. Instead, Allstate attempts to recast disagreements over wording, style, and terminology as fraud. The fraud, conspiracy, unjust enrichment, and money had and received claims against Teleradiologists should also be dismissed because the Complaint does not plausibly allege elements of each claim.

## II. LEGAL STANDARD

8. To avert dismissal under Fed. R. Civ. P. 12(b)(6), the complaint must provide sufficient factual allegations that, when assumed to be true, state a claim that has facial plausibility. *Iqbal*, 556 U.S. at 678-79. Facial plausibility comes from pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The pleading standards of Rule 8 are not satisfied by a complaint that offers only labels and conclusions, a formulaic recitation of the elements, or naked assertions devoid of further factual enhancement. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557). In determining a Rule 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). "Dismissal can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737–38 (S.D. Tex. 1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 663. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

9. When considering a motion to dismiss under Rule 12(b)(6), the Court's review is limited to the complaint; any documents attached to the complaint; any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint; and matters subject to judicial notice under Federal Rule of Evidence 201. *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022). If the plaintiff's allegations are contradicted by facts disclosed by a document attached to the complaint or by facts disclosed by a document attached to the motion to dismiss that is central to the claim and referenced by the complaint, then the plaintiff's contradicted allegations are not accepted as true. *Carter v. Target Corp.*, 541 Fed. App'x 413, 417 (5th Cir. 2013) (refusing to accept as true factual allegations that were contradicted by the plaintiff's EEOC charging documents, which the defendant had attached to its motion to dismiss) (citation omitted); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) ("If such an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.").

10. The Teleradiologists request the Court consider by judicial notice the enclosed Exhibits, consisting of the deposition testimony of Dr. Fan and Dr. Miguel Oneto, along with the Contract and Facility Note referenced[3] in the Complaint (but not attached). Alternatively, request is made the Court consider these pursuant to the doctrine of incorporation-by-reference, because

---

[3] *See, e.g.*, ECF No. 1 at ¶ 121 ("Khit contracted with [Quality Imaging] to evaluate x-ray, CT, and MRI scans, and issue radiology reports under Insight's name[.]";¶ 208, n. 32, referring to Quality Imaging's Contract and Invoices, attached to the Petition filed in *Miguel Oneto, MD, PA v. South Texas Clinic for Pain Management, PA*, Cause No. CL-23-4370-1 in the Hidalgo County Court at Law; and at ¶ 389 (l) referencing contract between Insight and Quality Imaging "to provide teleradiology services for Insight during the period at issue."); ¶ 125 (referencing "a deposition of Dr. Fan in 2024"); ¶ 127 ("Miguel Oneto, M.D. testified in June of 2025 . . .").

the deposition testimony and exhibits thereto are central to Allstate's claims and are needed to correct Allstate's mischaracterized allegations against the Teleradiologists. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) ("When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents.").

## III. ARGUMENT & AUTHORITIES

### A. ALLSTATE FAILS TO ALLEGE A VIABLE RICO CLAIM UNDER 18 U.S.C. § 1962(C).

11. To state a RICO claim under 18 U.S.C. § 1962, a plaintiff must allege and show the following: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009).

#### 1. Allstate Fails to Plead Teleradiologist Participation in the Operation or Management of the Alleged Enterprise.

12. RICO liability requires an association with the alleged RICO enterprise such that the defendant "participate[s] in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). The Supreme Court determined that the statutory language requires "an element of direction" and that RICO liability under 1962(c) extends only to those with "some part in directing those affairs." *Id.* at 179. The Court also stated that 1962(c) "cannot be interpreted to reach complete 'outsiders' because liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *Id.* at 185.

13. Although one need not be a ringleader, the Fifth Circuit has made clear that a defendant must have some supervisory involvement in an enterprise in order to satisfy § 1962(c)'s

conduct or participation requirement. *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 655 (S.D. Tex. 2016). "Thus, simply providing goods or services that ultimately benefit the enterprise will not subject one to liability." *Id.* (citing *In re MasterCard Intern. Inc., Internet Gambling Litig.*, 132 F.Supp.2d 468, 489 (E.D.La.2001), aff'd sub nom. *In re MasterCard Intern. Inc.*, 313 F.3d 257 (5th Cir.2002)). Merely having a business relationship with a RICO enterprise does not constitute operation and management of the enterprise's affairs necessary for RICO liability. *Compass Bank v. Villarreal*, No. 10–8, 2011 WL 1740270, at *13 (S.D.Tex. May 5, 2011) (collecting cases). Neither will simply contributing to the enterprise "with the knowledge of or willful disregard" for the other defendants' supposed criminal activity. *Benhamou*, 190 F. Supp. 3d 631, 655 (citing *Gonzalez v. Bank of Am.*, No. CV H-09-2946, 2011 WL 13261985, at *7 (S.D. Tex. Feb. 20, 2011), aff'd as modified sub nom. *Gonzalez v. Bank of Am. Ins. Services, Inc.*, 454 Fed. Appx. 295 (5th Cir. 2011)). "Even the receipt of funds or materials on its own, without more, will not establish that a defendant actually operated the scheme to obtain those funds or materials. *Id.* (citing *Davis–Lynch, Inc. v. Moreno*, 667 F.3d 539, 551 (5th Cir.2012)).

14. Allstate's allegations against the Teleradiologists reduce to this: they remotely interpreted imaging studies for Insight, and their signed reports later appeared in demand packages sent by claimants' counsel. The Complaint does not plausibly allege that any of the Teleradiologists formed, managed, directed, or supervised the alleged RICO enterprise.

15. The testimony of Dr. Fan, Dr. Miguel Oneto, and the exhibits to his deposition cited by the Complaint confirm the opposite. Dr. Oneto testified that QI & I customers include imaging or radiology centers, physician offices, healthcare centers, and multidisciplinary clinics. Ex. B at 16:24-17:09. QI & I has standard form contracts with its customers, such as the Insight Contract. Ex. B at 27:24-28:11. The Complaint concedes QI & I did not initiate the relationship with Insight

in 2018, and that the Teleradiologists were not the only group interpreting the imaging studies for Insight during the period at issue. *Id.* at ¶¶ 6, 123.[4] After Dr. Miguel Oneto met with the Insight medical directors, Insight accepted the standard form QI & I contract "as-is." Ex. B at 33:01-15. Pursuant to the Contract, any films intended for the Teleradiologists' review are transmitted to QI & I via a PACS system. Ex. B at 34:18-35:07. QI & I was never the exclusive radiology service to evaluate images such as x-rays and MRIs for Insight, and the Teleradiologists never knew what portion of Insight studies were sent to them for interpretation. Ex. B at 50:04-12. This nonexclusively further undermines any inference by Allstate that the alleged RICO scheme depended upon the Teleradiologists' direction or control.

16. QI & I only sent invoices to Insight for its services performed under the Contract. Ex. B at 35:15-25. The Contract was also amended in August of 2022 to increase the flat fees Insight was paying QI & I. Ex. B at 28:06-29:09. Ex. B at 33:16-22. Allstate's own allegations admit the nonexclusive relationship between Insight and QI & Interventions ended in December 2024, and Dr. Miguel Oneto testified this was because Insight rejected a new price schedule set by QI & I and terminated the Contract. ECF No. 1 at ¶ 128; Ex. B at 36:07-21. Insight's termination of QI & I's nonexclusive Contract confirms the Teleradiologists neither controlled the alleged enterprise, nor were they necessary to its continued operation.

17. Allstate complains Defendant Luis Khit advised QI & I "that all MRIs interpreted for Insight were "liability cases" and "instructed QI&I to have the radiologists use technical terms to describe findings and avoid use of the word "degenerative" and other terms commonly used to describe age-related wear and tear." *Id.* at ¶ 389(l). According to the Complaint, QI & I

[4] ("Beginning in the Summer of 2018, ***nearly*** all imaging studies Insight billed for, including x-rays, were interpreted by radiologists with QI&I.")(emphasis added).

"communicated these instructions to the interpreting radiologists through a facility note included with images to be reviewed for Insight." *Id.* at ¶ 389(l). The Complaint also alleges the Teleradiologists "prepared reports of their findings on Insight's letterhead as instructed by the facility note from QI&I, omitting terms such as 'degenerative' to make it appear that all noted abnormalities were the result of traumatic injury." *Id.* at ¶ 389(m). Based on these allegations, the Complaint concludes the Teleradiologists and other Defendants "have been employed by and/or associated with the Enterprise, [and] have participated in the management and operation of the Enterprise." *Id.* at ¶ 391. As set forth below in Section III.B, Allstate has vastly overstated the interactions between the Other Defendants and the Teleradiologists.

18. Even if these mischaracterized allegations were true, however, Allstate has still failed to allege that the Teleradiologists had any supervisory role in the scheme because the Complaint includes no facts alleging that the Teleradiologists in any way operated, managed, or directed the RICO enterprise. *See Iraheta v. Thurman & Phillips*, P.C., No. SA-20-CV-00003-XR, 2020 WL 4808764, at *4 (W.D. Tex. Aug. 18, 2020). The Teleradiologists are not implicated in the formation, management, or operation of any entity Allstate alleges played a part in "The Khit & Associates, PLLC Enterprise" or the alleged association-in-fact enterprise. *See* ECF No. 1 at ¶ 386 and ¶ 393-94; ¶ 49 (Chiropractic Entities); ¶¶ 51-53 (Diagnostic Imaging Facilities); ¶¶ 54-55 (Medical Practice Entities); ¶ 56 (Spinal Decompression and Remodeling Clinic, PLLC); ¶¶ 57-58 (Elkay Enterprises, LLC d/b/a Elkay Transport); ¶¶ 59-60 (Khit Property Management, LLC); ¶¶ 61-64 (Impact Professional Services, LLC); and ¶¶ 65-66 (Khit Multidisciplinary Group, LLC). Nor are the Teleradiologists implicated in the "Practice Locations or Providers" for Khit Chiropractic (¶¶ 68-89), Kay Medical (¶¶ 99-114) or Spinal Decompression Clinic (¶¶ 115-116).

19. Importantly, the Complaint includes no allegation that the Teleradiologists are

implicated in the ownership, direction, or operation of any of the Insight practice imaging facilities. *Id.* at ¶¶ 90-98. Nor does the Complaint plausibly allege that the Teleradiologists had any role in the other supposed features of the enterprise. There are no well-pleaded facts showing they marketed to attorneys, controlled clinic operations, directed referrals, supervised chiropractic assistants, managed other groups, controlled transportation, or participated in Insight's billing practices. At most, the allegations show a service relationship to read imaging studies.

20. That is insufficient under *Reves*. "Furnishing a client with ordinary professional assistance, even when the client happens to be a RICO enterprise, will not normally rise to the level of participation sufficient to satisfy the Supreme Court's pronouncements in *Reves*." *Handeen v. Lemaire*, 112 F.3d 1339, 1348 (8th Cir. 1997). It is not improper, much less illegal, for medical providers ordering imaging of patients to subcontract with radiology groups, such as QI & I, with qualified physicians who are trained and certified to interpret imaging studies. In *Allstate Insurance Company v. Benhamou*, 190 F.Supp.3d 631 (2016), the Southern District of Texas dismissed similar RICO claims against the nurse anesthetist who performed anesthesia services in an alleged fraudulent personal injury medical scheme, holding that merely being employed by a member of the enterprise, working under the supervision of others, and administering unnecessary procedures was insufficient to show the supervisory involvement required to satisfy § 1962(c)'s "conduct or participate" requirement. *Id.*, at 656. For the same reasons, Allstate's RICO claims against the Teleradiologists fail.

21. In sum, the Court should dismiss Allstate's § 1962(c) RICO claim against the Teleradiologists because Allstate has failed to plead sufficient facts to meet the *Reves* "operation or management" test for Teleradiologist participation in the conduct of the affairs of the enterprise.

**2. Allstate Fails to Plead Predicate Acts of Mail Fraud With Particularity.**

22. "To prove a 'pattern of racketeering activity,' a plaintiff must show at least two predicate acts of racketeering that are related and amount to or pose a threat of continued criminal activity." *Tel-Phonic Services, Inc. v. TBS International, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992). Allegations of mail fraud under 18 U.S.C. § 1314, the only predicate act of racketeering Allstate alleges, must meet the particularity requirements of Rule 9(b). *Id.* at 1138. While a Defendant's knowledge of the truth and intent to deceive may be pleaded generally, Rule 9(b) requires specific and particular allegations of "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* at 1139. The Fifth Circuit has also affirmed dismissal where RICO and fraud allegations were not pleaded with the required specificity. *Elliott v. Foufas*, 867 F.2d 877, 882 (5th Cir. 1989).

23. There is no allegation in the Complaint that the Teleradiologists independently committed mail fraud. Allstate does not allege that the Teleradiologists mailed anything to Allstate, billed Allstate, communicated with claimants' counsel, or made any direct representation to Allstate. Rather, the contention is the Teleradiologists' interpretations of imaging ordered by the patient's physicians were included in "demand packages" sent by personal injury lawyers to Allstate. ECF No. 1 at ¶¶ 366, 401-04. Specifically, Allstate contends that, "in those records and bills Defendants made fraudulent representations regarding the necessity of chiropractic and medical services, imaging studies, and injection procedures, the extent of services, the location and provider of services, and whether services were actually rendered, and fraudulently inflated the service costs." *Id.* at ¶ 403.

24. First, Allstate's argument fails because the Complaint does not challenge the medical necessity of the actual services the Teleradiologists rendered: reading and interpreting imaging studies already performed. Instead, it contends the reports were fraudulent because the

Teleradiologists allegedly embellished or exaggerated findings by using more specific technical terminology instead of simply using the word "degenerative." ECF No. 1, at ¶¶ 127, 195, 209, 295, 389(l), 356, 403. The linchpin of Allstate's liability theory against the Teleradiologists is that their medical records showed improper interference by Insight or Dr. Khit, in allegedly following his instructions by including "embellished findings to support the patients' personal injury claims and further referrals by the clinics." ECF No. 1, ¶ 1.

25. Despite also relying on the Facility Note for its claims against the Teleradiologists, and referencing a PACS screenshot produced during the deposition of Dr. Fan which showed this Facility Note, Allstate has not attached a copy of the Complaint. *See Id.* at ¶ 295. According to Allstate, "[t]he Facility Note advised that, 'All MRIs are liability cases.' There were also instructions that could only partially be seen, including 'Please descr…' and 'Degenerative changes should n…' " *Id.* at ¶ 125. However, looking at the entire screenshot and Facility Note attached as Exhibit D refutes Allstate's characterization. The full facility note states:

> All MRIs are liability cases. Please describe, if present, disc herniations and bulges WITH measurements and effect on foramina and nerves. Customer wants 'detailed descriptions.' Degenerative changes should not be simplified, rather describe each level in detail.
>
> In all X-RAYS please mention, if present, any abnormal curvature, addressing straightening, hyperlordosis, etc. Be specific to levels if there is disc space narrowing.

Ex. D (emphasis in original).

26. A plain reading of the Facility Note shows that it does not instruct the Teleradiologists to conceal degeneration – it instructs them to be *more specific*. Moreover, as degenerative changes are caused by chronic wear and tear, and likely not related to trauma injuries caused by MVA, then by including details of degeneration in their reports, the Teleradiologists are

saying that those findings are likely not related to trauma caused by MVAs.

27. As Dr. Oneto explained to Allstate during his deposition, QI & I has a different facility note for each one of its customers, such as Insight. Ex. B at 62:14-63:01. Due to the volume handled by teleradiologists, QI & I uses the facility notes section to add reminders about particular requests from facilities or referring doctors because the Teleradiologists do not have direct physical contact with the referring provider. Ex. B at 62:19. The facility notes help the Teleradiologists understand what kind of specialty the referral is coming from, such as kidney doctors or OB-GYNs. Ex. B at 63:02-13.

28. Dr. Oneto testified that he authored the "liability cases" notation because Insight was a new customer sending accident-related studies, and that the note concerning herniations and degenerative changes meant the customer wanted measurements and level-by-level detail rather than shorthand descriptors. Ex. B at 63:17-20, 64:04-09, 64:14-21, 65:09-67:25. Dr. Oneto also testified that Dr. Luis Khit ***did not ask*** QI & I to add this in the facility note, and that QI & I now provides that level of detail for all its customers. Ex. B at 64:14-21, 73:11-74:21.

29. Second, Dr. Fan testified that when reviewing studies in the PACS system, she did not see the side information the way it appears on printed screenshots, but instead saw the report box and imaging workstation interface. Ex. A at 13:08-24. Dr. Fan also testified that Insight did not require her to prepare any specific kind of report. Ex. A at 36:13-16.

30. Third, the Complaint's own example [ECF No. 1, at ¶ 297] merely shows a terminology dispute, not fraud. Allstate compares Dr. Fan's report with a reread using the word "degenerative" to describe chronic findings such as minimal or mild endplate change and small osteophyte/disc protrusions. Allstate's comparison does not plausibly show fabrication, only differing descriptive language for chronic findings. *See also* Ex. B at 73:04-76:24 (Dr. Miguel

Oneto explaining different degenerative findings to Allstate).

31. Fourth, Allstate's suggestion that the reports were not individualized is contradicted by the exhibits explaining the reporting workflow. *Id.* at ¶326-28. Allstate claims the Teleradiologists "prepare reports on Insight's letterhead using a template." *Id.* at ¶¶ 174 and 156(c). This is another mischaracterization; Allstate knows the signed final readings of the Teleradiologists were delivered to Insight via the QI & I PACS system pursuant to the Contract. Said agreement was produced by Dr. Miguel Oneto in the deposition cited at Complaint [ECF No. 1, ¶ 127] to the same counsel representing Allstate in this case. The reports submitted for QI & I via PACS by the Teleradiologists also do not show they were prepared on Insight letterhead. Ex. B at 24:25-25:06; 69:05-70:14. Instead, the reports are signed by the Teleradiologist and include a QI & I logo. Ex. B at 71:14-72:03. Furthermore, Dr. Fan testified that an uncomplicated cervical MRI typically takes five to eight minutes and that when two studies for the same patient appear together, she often reviews them together and then finalizes the reports close in time, so the signature times do not reflect the full time spent reviewing the images. Ex. A at 15:02-24, 21:23-22:09, 37:01-23.

32. Dr. Oneto similarly testified that report headers and certain template fields were prepopulated, that he dictated findings by voice recognition while viewing the images, and that closely timed completion stamps could result where reports had already been proofread and were ready for release. Ex. B at 59:18-61:05, 61:19-25, 71:14-72:16. Such "mere suspicion" of fraudulent readings is based only upon the submission times for such records "does not comply with Rule 9(b)." *MacKenna v. Ellis*, 263 F.2d 35, 38 (5th Cir. 1959).

33. Fifth, Allstate cites no evidence and asserts only conclusory allegations about the Teleradiologists with regard to global billing. The testimony of Dr. Fan and Dr. Miguel Oneto

further refutes any claim that the Teleradiologists prepared bills or controlled global charges. Dr. Fan testified she had never seen the patient bill and had no input into CPT coding or charges. Ex. A at 41:06-19. Dr. Oneto testified that neither he nor anyone at QI & Interventions was involved in Insight's billing and that QI & Interventions was paid only a flat fee per study. Ex. B at 79:03-19; 80:06-14. QI & I invoices customers, such as Insight, each month for its services performed during the previous month interpreting imaging. Ex. B at 38:01-08. Insight was responsible for storing the images and the Contract expressly provides that Insight, not QI & Interventions, "shall handle all aspects of patient billing and collections." Ex. B at 54:08-12.

34. Indeed, it is not the Teleradiologists who are purporting to charge patients for both the imaging facility fee (referred to in the Complaint as the technical component, at ¶ 97, n. 11) and professional component (which covers the radiologist's fees for interpreting the scan and preparing a report). *Id.* at ¶ 95-97. The Teleradiologists could not make any misrepresentations in the superbills because Insight – not QI & I – sends the invoices for the x-rays, MRIs, sonograms, and other imaging studies at issue. *Id.* at ¶ 94-95; Ex. C. Furthermore, payments to QI & I from Insight under the Contract were not contingent upon payment from Allstate to the claimants' attorneys or otherwise dependent on Insight's ability to collect fees. Ex. C at p. 3.

35. Finally, even if Allstate sufficiently alleged predicate acts of racketeering by the Teleradiologists, the Complaint forecloses *any* threat of continuing activity as the Insight relationship with QI & I ended in December 2024. *Id.* at ¶ 128. *See Tel-Phonic Service, Inc.*, 975 F.2d at 1138 (5th Cir. 1992). In sum, because Allstate fails to adequately plead any predicate act of mail fraud by the Teleradiologists with the particularity Rule 9(b) requires, the Court should dismiss the RICO claim against the Teleradiologists because the Complaint fails to adequately allege a pattern of racketeering activity.

## B. <u>ALLSTATE'S COMMON LAW FRAUD, CONSPIRACY, UNJUST ENRICHMENT, AND MONEY HAD AND RECEIVED CLAIMS FAIL AS A MATTER OF LAW.</u>

36. After dismissing the Allstate's federal claim against the Teleradiologists, the Court should decline supplemental jurisdiction over Allstate's state-law claims against the Teleradiologists. It is clear that in the event a district court dismisses a RICO claim, which is a federal question, the district court has discretion whether to exercise supplemental jurisdiction over state law claims. *Arruda v. Curves Int'l., Inc.*, Civ. No. 6:20-cv-00092-ADA, 2020 WL 4289380 at *8 (W.D. Texas July 27, 2020). However, "[a]bsent any pendent federal claims, this Court only has jurisdiction over state law claims unless there is complete diversity of the parties." *Id.* Furthermore, "[o]ur general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Enochs v. Lampasas County*, 641 F.3d 155, 161 (5th Cir. 2011). The "Supreme Court has for [now more than] half a century cautioned federal courts to avoid '[n]eedless decisions of state law[.]"' *Id.* (quoting *United Mine Workers of America v. Gibs*, 383 U.S. 715, 726 (1966)).

37. Plaintiff Allstate County Mutual Insurance Company is a Texas corporation with its principal place of business in Texas. ECF No. 1, ¶ 20. A majority of Defendants in this matter are incorporated in, have their principal places of business in, and/or reside in Texas. *Id.* at ¶¶ 21-46. There are Texas parties on both sides of this case, so jurisdiction rests solely on the federal question of Allstate's RICO claim. Complete diversity does not exist. If the Court dismisses Allstate's RICO claim against the Teleradiologists, as it should, then there is no reason for the Court to retain jurisdiction over Allstate's state-law claims against Teleradiologists when the case is "in its infancy." *Enochs*, 641 F.3d at 161. For these reasons, in addition to the deficiencies of Plaintiffs' state law claims identified, the Court should dismiss all remaining state law claims

against the Teleradiologists for lack of subject-matter jurisdiction under Rule 12(b)(1).

38. **Fraud.** Allstate's fraud claims against the Teleradiologists fail to comport with the pleading requirements of Fed. R. Civ. P. 9(b). Defendants incorporate paragraphs 1-7 and 15-35 of this Motion, as if restated herein verbatim. Specifically, the Complaint does not plead with Rule 9(b) particularity any false representation made by the Teleradiologists to Allstate, when it was made, why it was false, or facts showing fraudulent intent.

39. Allstate alleges all defendants in this matter, including Teleradiologists, made or caused to be made false and fraudulent material misrepresentations of fact. ECF No. 1, ¶ 415. Allstate's sole complaint against the Teleradiologists, however, is that their findings on radiology reports Insight received from QI & I accurately represented conditions that were consistent with traumatic injuries that resulted from the accidents at issue. *Id.*, ¶ 416 (l). The core premise of the fraud claim, namely that the reports were false because they avoided the word "degenerative," is contradicted by Exhibit D and the cited deposition testimony of Teleradiologists. Ex. A at 13:08-24; 36:13-25; 37:18-38:12; Ex. B at 62:14-63:20; 73:11-77:03. The Teleradiologists' reports did not describe traumatic injury. Ex. B at 73:11-77:03. As set forth above, the Teleradiologists did not avoid the word "degenerative" and, instead, precisely described all degenerative changes with measurements of what they saw in patient images.

40. The only other inference of fraud by the Teleradiologists in the Complaint appears to be the lapse of time between when certain radiology reports were signed, *not completed*, and a partial facility note that has been misinterpreted and misrepresented to this Court to say that Defendants were to omit any mention of degenerative changes. ECF No. 1, ¶¶ 295, 328. Again, these premises are not only untrue, but have not been pled with sufficient particularity under Fed. R. Civ. P. 9(b). Finally, the evidence submitted to support common law fraud claims made by

Allstate in a similar case were previously found insufficient to show reliance or proper damage calculations. *Allstate Ins. Co. v. Receivable Fin. Co., LLC*, 501 F.3d 398, 413-14 (5th Cir. 2007) (reversing a Texas-law fraud verdict and rendering a take-nothing judgment under a similar fact-pattern). The Court should likewise dismiss Allstate's fraud claim against the Teleradiologists.

41. **Conspiracy.** Similarly, Allstate's conspiracy claim alleging that all defendants conspired to defraud Plaintiffs fails to comport with the pleading requirements of Fed. R. Civ. P. 9(b). Defendants incorporate paragraphs 1-7 and 15-35 of this Motion, as if restated herein verbatim. "Because conspiracy to defraud is a derivative tort that includes an underlying claim of common-law fraud, under Rule 9(b) if the plaintiff fails to adequately plead fraud, the court must dismiss the conspiracy claim too." *In re Enron Corp. Securities, Derivative & Erisa Litigation*, 762 F.Supp.2d 942, 958 (S.D. Tex. 2010). The conspiracy claim fails because it is derivative of the fraud claim and because the Complaint does not plead sufficient facts under Rule 9(b) to plausibly allege a specific agreement involving the Teleradiologists to defraud Allstate.

42. **Unjust Enrichment.** Plaintiffs fail to sufficiently plead Teleradiologist unjust enrichment predicated upon the alleged fraud described throughout Plaintiffs' complaint. Defendants incorporate paragraphs 1-7 and 15-35 of this Motion, as if restated herein verbatim. While there is a split of authority within the Fifth Circuit, courts have held that an unjust enrichment claim may be subject to 9(b) pleading requirements. *See Marion v. Principal Life Ins. Co.*, Civ. Act. No. H-23-0150, 2023 WL 5761287 at *3-*4 (S.D. Tex Sept. 6, 2023). Indeed, The Complaint cites false and fraudulent representations as a partial basis for their unjust enrichment claim. ECF No. 1, ¶ 430. This suggests that Fed. R. Civ. P. 9(b) is invoked in pleading unjust enrichment. For the reasons stated above at ¶¶ 24-35, Plaintiffs fail to meet the pleading requirements of Fed. R. Civ. P. 9(b) and this claim should be dismissed.

43. Moreover, Allstate has not alleged facts that would entitle them to recover for unjust enrichment against the Teleradiologists in this matter. Unjust enrichment is an equitable theory that allows a party to recover when a person has obtained a benefit from another by fraud, duress, or the taking of undue advantage. *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 665 (S.D. Tex. 2016) (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). Unjust enrichment occurs when the person sought to be charged wrongfully secured a benefit or passively received a benefit that would be unconscionable to retain. *Id.* Allstate has done no more than assert conclusory allegations that the Teleradiologists engaged in some purported fraudulent, nefarious, or otherwise unlawful behavior in reading any radiological images.

44. The Teleradiologists merely received a flat-fee from Insight for rendering professional medical services and, as set forth above, no Other Defendant had any control over the Teleradiologists' services. Allstate has not alleged it made any payments to Teleradiologists. Allstate has not alleged the Teleradiologists received any payments from Allstate. Allstate has not alleged the Teleradiologists' medical care, interpreting imaging studies, was unreasonable or unnecessary. Nor does Allstate allege any unconscionability on behalf of Teleradiologists in retaining payments they received from Insight for reading imaging studies - which were paid pursuant to the QI & I Contract - *separately and apart from* any settlement amounts Allstate paid. Therefore, the Court should dismiss the unjust enrichment cause of action against Teleradiologists.

45. **Money Had and Received.** To maintain a claim for money had and received under Texas law, Allstate must establish that the Teleradiologists hold "money which in equity and good conscience belongs to" Allstate. *See Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) ("Money had and received is an equitable doctrine applied to prevent unjust enrichment."). While a plaintiff "need not show that the defendant acquired the money through

fraud or duress," Allstate still must allege "a lack of good faith in the acceptance of the stolen or pilfered funds." *Id.* at 843. Accordingly, to state a claim for money had and received, Allstate must plead sufficient facts to allege (a) the Teleradiologists each received the money at issue, and (b) the money at issue in equity and good conscience belongs to Allstate. *See Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 675–76 (W.D. Tex. 2019) (dismissing money had and received claims against individual defendants where there is no allegation the individual received money and no differentiation between money received by the individual and another).

46. Allstate only makes the conclusory allegation, "The money Defendants obtained in connection with the payment of the claims at issue in equity and good conscience belongs to and should be returned to Allstate." ECF No. 1, ¶ 438. Defendants incorporate paragraphs 1-7 and 15-35 of this Motion, as if restated herein verbatim. The Complaint includes no allegations to support the claim against Teleradiologists individually because Allstate has failed to identify what money the Teleradiologists received individually and why, exactly, that money belongs to Allstate. The Complaint alleges no facts showing that the Teleradiologists have ever received any money belonging to Allstate, let alone that the Teleradiologists received such money in bad faith. The alleged payments reflected in the record are contract payments from Insight for radiology reads, not funds traceable from Allstate to the Teleradiologists. For these reasons, Allstate has failed to state a claim for money had and received against the Teleradiologists.

## IV. CONCLUSION

For these reasons, Allstate's RICO claim against the Teleradiologists should be dismissed with prejudice, and its claims for fraud, conspiracy, unjust enrichment, and money had and received should be dismissed for lack of subject-matter jurisdiction or dismissed with prejudice for failure to state a claim.

DATE: June 22, 2026

Respectfully submitted,

By: Ricardo G. Cedillo
Texas Bar No. 04043600
Joseph L. Korbel
Texas Bar No. 24127174

**DAVIS, CEDILLO & MENDOZA, INC.**
755 E. Mulberry Ave., Ste. 250
San Antonio, Texas 78212
Telephone: 210.822.6666
Facsimile: 210.660.3795
Email: rcedillo@lawdcm.com
Email: jkorbel@lawdcm.com
Email: zgilbert@lawdcm.com

**ATTORNEYS FOR DEFENDANTS JULIETA ONETO, MD., MIGUEL ONETO, MD, MIGUEL ONETO MD., P.A., D/B/A QI & INTERVENTIONS AND SUSAN FAN, M.D.**

## CERTIFICATE OF SERVICE

I certify that on this 22nd day of June 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the parties on record.

/s/

RICARDO G. CEDILLO

Joseph L. Korbel