# EXHIBIT C

## QI & INTERVENTIONS TELERADIOLOGY SERVICES AGREEMENT

AGREEMENT made this June 15, 2018, between Miguel Oneto, MD, PA dba **QI & Interventions,** a Texas Professional Association with a principal office in Harlingen, Texas, hereinafter referred to as **QI&I,** and SKAK Investments, LLC Dba Insight Diagnostic + Imaging Center, hereinafter referred to as **CLIENT.**

WHEREAS, CLIENT is the operator of a mobile diagnostic center, with the main office located at 5410 N. 10th St, McAllen, TX 78504.

WHEREAS, QI&I operates a teleradiology service company that provides for radiology and teleradiology services for the CLIENT,

NOW THEREFORE, for and in consideration of the mutual covenants, promises and payments as hereinafter set forth, QI&I and CLIENT agree as follows:

### ARTICLE 1
### DUTIES AND RESPONSIBILITIES OF QI&I

1. QI&I shall provide the following teleradiology services:

STAT reports will be generated within 1 hour or less following receipt of the complete study by QI&I in the PACS system or other viewing software used by QI&I.
ROUTINE reports will be generated within 24 hours or less following receipt of the complete study in the PACS system.

(1) Studies shall be considered "complete" following receipt of ALL patient information which shall include ALL of the patient's images, ALL relevant paperwork, patient's clinical history, and billing information at QI&I PACS software.

(2) Reports may be emailed to CLIENT's default email destination and to the referring physicians if requested.

(3) The QI&I PACS software is the official database of all studies to be interpreted by QI&I. It is the responsibility of the CLIENT's technologists to check the QI&I PACS software to be sure the studies they want interpreted and all relevant information is available on the system. QI&I is NOT responsible for studies performed during the accepted hours of coverage that are incomplete and/or did not have the required paperwork sent to the QI&I PACS software.

2. QI&I shall provide CLIENT a Web-based PACS solution, storage and disaster recovery of the studies interpreted by QI&I. CLIENT will assist QI&I in the installation of QI&I software in the center and in the offices of referring physicians of CLIENT so they can have instant access of reports.

In the event that this agreement is terminated, QI&I will transfer the images to another system selected by CLIENT, at CLIENT's expense.

3. The hours of coverage for STAT cases will be Mondays through Fridays 8 AM - 5 PM CST, excluding holidays, unless otherwise mutually agreed. QI&I radiologists shall be available by phone during hours of coverage. STAT reports are not available for echocardiograms which will be interpreted within 24 hs.



EXHIBIT
3

4. QI&I radiologists shall, at all times, maintain a valid state license in the state in which the CLIENT maintains its offices.

5. QI&I radiologists shall have professional liability insurance coverage with a minimum of $200,000/$600,000 per claim/annual aggregate or the minimum as required by law, Medicare, Texas, or third party payers.

6. QI&I hereby agrees to devote its best efforts, attention, and energies to perform its duties hereunder, and to maintain the success and reputation of the Center.

## ARTICLE 2
## DUTIES AND RESPONSIBILITIES OF CLIENT

1. CLIENT shall respond to the needs of QI&I as follows:

(1) Provide names and emails where to send the reports.

(2) Provide names, emails, and phone numbers of crucial contacts at CLIENT'S facility.

(3) Cooperate in providing assistance to QI&I to effect the installation and testing of equipment through CLIENT'S IT department, biomed department, technologists,, administrators, any other relevant personnel and referring physicians' offices.

(4) CLIENT must be able to send DICOM images.

(5) Send all radiology images and paperwork, including billing information according to the exact directives of the QI&I networking team.

(6) In the interest of quality of patient care, during the coverage hours of QI&I, it is imperative that QI&I radiologists and technicians have a reliable mechanism of emergently contacting (within 10 minutes) each and any of the on-duty technologists who are performing studies. CLIENT agrees to provide one or both of the following (1) a phone number that is staffed throughout the hours of QI&I coverage with a live person who can locate a given radiology technologist and/or (2) a pager or cell phone to be carried by one of the radiology technologists or staff members who is able to contact a given radiology technologist. QI&I and its radiologists shall not be responsible for adverse outcomes as a result of inability to contact a radiology technologist during QI&I hours of coverage.

(7) Studies must be submitted properly. If the study is NOT submitted properly, QI&I shall not be responsible for the study. Studies are to be sent as a complete study, not a series at a time as this can lead to studies being interpreted based on an incomplete set of images. It is the radiology technologists' responsibility to immediately inform QI&I technicians if they are having difficulty sending information to QI&I or if they would like to submit additional images that were part of the original study not sent together with the original set of images. CLIENT understands that interpretation will not be performed on incomplete studies. CLIENT also understands that reports may be significantly delayed if an incomplete study is submitted and the involved CLIENT personnel must be contacted to provide proper information.

(8) All facility members that use the QI&I PACS software shall have individual usernames and passwords. QI&I shall not support sharing of usernames and passwords for access to the QI&I PACS software.

(9) Discuss all service issues initially at the time of negotiation. Terms and conditions of this agreement apply only to services discussed and covered by this agreement for the facilities listed on the signature page at the time of signature. Terms and conditions may be different for additional facilities or services added in the future

(10) Radiology technologists and other involved personnel agree to follow protocols that have been agreed upon at the time of execution of this contract or thereafter, including imaging protocols, sending required paperwork, delivering images in the proper orientation, sending all images properly without missing images or priors, unless there are specific patient limitations or mechanical failure. A significant pattern of incorrectly submitted studies constitutes breach of contract.

(11) US technologists shall provide a preliminary report within the PACS software of QI&I

## ARTICLE 3
## COMPENSATION

1. CLIENT is responsible for and shall handle all aspects of patient billing and collections.

2. QI&I FEES are as follow:

    i. $60 per MRI

    Each billable CPT code or body part is considered one study.
    Timely payment of fees to QI&I shall not be dependent on CLIENT'S ability to collect fees.

3. CLIENT agrees to hold all compensation details confidential between QI&I administration and CLIENT. Revealing QI&I fees to ANYONE shall constitute breach of this contract.

4. There are no inherent setup fees, but CLIENT shall pay an hourly technical fee of $125 plus trip charges for all onsite support/repair visits by QI&I technical support team <u>not related to normal support and maintenance of the QI&I gateway</u>. The charges shall be waived if the repair was necessary as a result of a defect or problem with QI&I equipment/software.

5. Payment details: QI&I shall provide monthly electronic invoices to CLIENT for the fees. CLIENT must provide a reliable email address for this purpose and immediately inform QI&I (with confirmation) if there is a change or discontinuation of this email address. If CLIENT fails to deliver payment of fees to QI&I in a timely manner, then, QI&I reserves the right to immediately discontinue any or all services until such time as payment of ALL outstanding invoices, including those that have been issued but are not due, are brought current and received by QI&I. Under this provision, should QI&I discontinue its services then in progress, QI&I is not responsible for paying the storage/DC fees of the unpaid studies. QI&I's suspension of services as a result of CLIENT'S failure to timely pay shall not be deemed in default or breach of its obligations under this Agreement and it shall not operate as or

constitute an election to terminate the Agreement by QI&I, and the term of this Agreement shall continue notwithstanding the suspension of services until terminated as herein provided.

6. Invoices shall be paid by the thirtieth (30th) day of the invoice date by automatic debit or by mailing a check to the address that is in the invoice. Overdue invoices shall bear a service charge of 18% per annum.

**ARTICLE 4**
**TERMINATION FOR CAUSE**

1. This Agreement shall terminate if either party applies or consents to the appointment of a receiver, trustee or liquidator of itself or of a substantial part of its assets; file a voluntary petition in bankruptcy; admits in writing its inability to pay its debts as they become due; makes a general assignment for the benefits of creditors; files a petition or answer seeking reorganization or arrangement with creditors or takes advantage of any insolvency law; or if any order, judgment or decree shall be entered by a court of competent jurisdiction on the application of a creditor, adjudicating such party as or insolvent or approving a petition seeking reorganization of such party or appointing a receiver, trustee or liquidator of such party or of all or a substantial part of its assets, and such order, judgment or decree shall continue unstayed and in effect for a period of thirty (30) consecutive days.

2. If CLIENT shall perceive "significant problems" with one or more features of QI&I services, CLIENT shall first directly contact QI&I management to discuss the issue(s). QI&I shall immediately address the issue(s), if possible, and provide appropriate follow up with CLIENT. If the issue(s) cannot be remedied to CLIENT'S satisfaction within thirty (30) days, the CLIENT may then immediately discontinue QI&I' services and terminate this agreement by providing written notice of such termination to QI&I.

**ARTICLE 5**
**FORCE MAJEURE**

1. Despite anything to the contrary in this Agreement, neither party will be liable or in default of this Agreement for any delay or failure of performance resulting directly from anything beyond reasonable control of the nonperforming party (a "Force Majeure" event), including, but not limited to acts of God; acts of civil or military authority; acts of a public enemy; war; severe weather, earthquakes, or floods; fires or explosions; governmental action or regulation; strikes, lockouts, or other work interruptions or labor shortages; or blocked access rights. The time for performance of a party hereunder shall be extended commensurate with the duration of the Force Majeure event.

**ARTICLE 6**
**CONFIDENTIALITY AGREEMENT /**
**MUTUAL NON-SOLICITATION OF EMPLOYEES**

During the term of this Agreement and at all times thereafter, neither party nor their employees shall disclose, communicate, divulge, or use for their direct or indirect benefit any confidential business, technical information, or trade secrets of QI&I or CLIENT under this Agreement unless otherwise required by law. Confidential information includes, but is not limited to, the terms and provisions of this Agreement. The confidentiality covenants shall survive the termination of this Agreement. During the term of this Agreement and upon termination of this Agreement, the parties agree to refrain from soliciting each other's employees or associates for a period of two years unless prior arrangements have been agreed upon in writing.

**ARTICLE 7**
**TERMS OF CONTRACT**

1. The initial term of this Agreement shall be for twelve (12) months from the Effective Date. This Agreement shall automatically renew for successive twelve (12) month terms, unless either party gives the other written notice at least ninety (30) days before the termination date.

**ARTICLE 8**
**AMENDMENTS**

1. This Agreement may be amended in writing at any time by mutual agreement of both parties.

**ARTICLE 9**
**LEGAL ACTION**

1. In the event either party has a dispute with the services or terms of this Agreement, that party shall notify the other party of the dispute. If the dispute is not resolved by the non-disputing party within thirty (30) days, the parties agree to submit the dispute to mediation before a mutually agreeable neutral third party. If the mediation does not successfully resolve the dispute, the parties are free to pursue litigation to enforce the terms and provisions of this Agreement. At the completion of litigation or binding arbitration, if chosen, the prevailing party shall be entitled to reimbursement of its attorney fees and expenses.

**ARTICLE 10**
**INDEPENDENT CONTRACTOR**

1. The relationship between the parties and between QI&I and CLIENT is that of independent contractors. It is mutually understood and agreed that in the performance of its services under the Agreement, QI&I is at all times performing its services as an Independent Contractor and acknowledges that it is responsible for payment of its estimated Federal Income Tax, employment tax, and social security taxes for its employees. QI&I shall employ its own means and methods in the performance of the services under this Agreement and CLIENT's sole concern is that, irrespective of the means selected, such services shall be provided in a competent, efficient and satisfactory manner. It is expressly agreed that no partner or employee of QI&I shall, for any purpose, be deemed to be CLIENT's employee. Further, QI&I will comply with all federal, state and local taxing authorities, regulations and laws.

**ARTICLE 11**
**COMPLETENESS OF AGREEMENT**

1. This Agreement sets forth the entire, final and complete understanding between the parties relevant to the subject matter of this Agreement. This Agreement supersedes and replaces any and all previous understandings or agreements, whether written, oral, or implied, relevant to the subject matter of this Agreement made or existing before the date of this Agreement, and no changes or additions to this Agreement shall be recognized unless and until made in writing and signed by all parties. This Agreement is subject to the laws of the State of Texas. Any legal proceeding (including, without limitation, any lawsuit) arising out of or relating to this Agreement, its performance, its interpretation, or its breach must be brought exclusively in a federal or state court located in Hidalgo County, Texas.

IN WITNESS WHEREOF, the parties have executed this Agreement, effective on the date first written above.

**QI& INTERVENTIONS**

Miguel A. Oneto, MD, President

6/18/2018

**Date**

CLIENT

Insight Diagnostics + Imaging Center

Name: Art Alexander

Title: CFO

Facility(s)

Email to receive invoices:
accounting@khitchiropractic.com

6/15/18

Date

QI & Interventions
Radiology Services
Phone: (956) 627-3083
Fax: (888) 557-6285

CLIENT: ____________________

I authorize QI & Interventions/ Excel Advantage Services LLC to initiate either an electronic debit or to create and process a demand draft against my bank account according to the terms outlined below.

Terms of Billing

Monthly fees due

Bank Information

Bank ABA Number [Customer's Routing Number] ____________________

Bank Account Number [Customer's Account Number] ____________________

Bank Account Type: [Checking/Savings/Business Checking] ____________________

Client's phone number: ____________________

This payment authorization is to remain in full force and effect until I notify QI & Interventions of its cancellation by sending written notice in such time and in such manner to allow both the Merchant and receiving financial institution a reasonable opportunity to act on it

____________________ By: ____________________
Company Name Customer Signature

____________________ ____________________
Date Signed Customer Printed Name

**FIRST AMENDMENT TO PROFESSIONAL SERVICES AGREEMENT**

This FIRST AMENDMENT TO TELERADIOLOGY SERVICES AGREEMENT (the "Amendment I") is entered into as of August 18th, 2022 (the "First Amendment Effective Date"), by and between SKAK INVESTMENTS LLC dba Insight Diagnostic ("Client") and Miguel Oneto, MD, PA DBA QI & Interventions ("QI&I").

WHEREAS, SKAK INVESTMENTS LLC ("Client") and Miguel Oneto, MD, PA DBA QI & Interventions ("QI&I") have previously entered into a Teleradiology Services Agreement with an effective date of June 15, 2018.

WHEREAS, the parties seek to amend certain terms of the Agreement,

NOW, THEREFORE, in consideration of mutual promises and subject to the terms set forth herein, the parties hereby agree as follows:

*The parties delete and replace the Article 3 Section 2 by the following:*

QI&I Fees are as follow:

i. X-ray $11.00
ii. MRI $70.00

Each billable CPT code or body part is considered one study. Timely payment of the fees to QI&I shall not be dependent on CLIENT's ability to collect fees.

Except as expressly modified by this Amendment, all terms, conditions and provisions of the Agreement shall continue in full force and effect.

IN WITNESS WHEREOF, this Addendum has been duly executed by the Parties hereto as of and on the date first above written.

**SKAK INVESTMENTS LLC:**

___________________________

Name: ________________
Title: ______________

**Miguel Oneto, MD, PA:**

__________________________

Name: Miguel Oneto, MD
Title: President