**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| ALLSTATE INSURANCE | § | |
| COMPANY, *ET AL.,* | § | |
|    *Plaintiffs* | § | |
| | § | |
| vs. | § | Civil Action No. <u>1:26-CV-543</u> |
| | § | |
| KHIT CHIROPRACTIC AND, | § | |
| REHABILITATION, PLLC, *ET AL.*, | § | |
|    *Defendants* | § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
THE ONETO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................................ii

TABLE OF AUTHORITIES.......................................................................................................... iv

I.    INTRODUCTION .................................................................................................... 1

II.   NATURE AND STAGE OF PROCEEDINGS ....................................................... 2

III.  FACTUAL ALLEGATIONS ................................................................................... 2

   A. In mid-2018, the Khits expanded their enterprise, opening Kay Medical clinics and partnering with QI&I radiologists for diagnostic imaging. ................................................. 2

   B. Central to the Khits' scheme was Insight's reliance on QI&I radiologists' "detailed" interpretations of diagnostic imaging................................................................................... 3

      1.  The Khits contracted with QI&I, relying almost exclusively on the individual Oneto Defendants to interpret scans billed through Insight. .................................................. 3

      2.  The Khits asked QI&I radiologists to provide "detailed" interpretations of their scans to obscure degenerative findings, and QI&I complied. .................................... 4

      3.  Providers routinely relied on the Oneto Defendants' "detailed" interpretations to justify further referrals and procedures..................................................................... 5

      4.  The Oneto Defendants sought to conceal the Khits' scheme by seeking to evade discovery in underlying personal injury cases. ......................................................... 5

   C. The Oneto Defendants' participation in the scheme harmed Allstate. .............................. 5

IV.   STANDARD OF REVIEW ...................................................................................... 6

V.    ARGUMENT............................................................................................................. 6

   A. The Court should not consider facts or allegations outside the Complaint. ...................... 7

   B. Allstate's Complaint satisfies Rule 9(b). ........................................................................... 7

1. The Complaint alleges a detailed fraudulent scheme. ................................................. 7

2. Rule 9(b) does not require claim-by-claim detail where a systematic scheme is alleged. ................................................................................................................................ 8

3. The Complaint alleges the Oneto Defendants' knowledge and intent......................... 9

C. Allstate adequately pleads RICO claims............................................................................ 10

1. The Oneto Defendants participated in the conduct of the enterprise's affairs.......... 10

2. Allstate adequately alleges mail fraud predicate acts. ............................................. 12

3. The Complaint alleges a continuing pattern of racketeering activity. ...................... 14

4. Allstate alleges a valid RICO conspiracy claim. ...................................................... 14

D. Allstate states claims under Texas common law. ............................................................... 15

1. The Oneto Defendants' pattern of racketeering gives rise to common-law fraud claims. ......................................................................................................................... 15

E. Allstate adequately alleges facts to state a claim for conspiracy to commit common-law fraud. .................................................................................................................................... 17

F. Allstate adequately states claims for unjust enrichment and money had and received. ... 18

G. The Court should retain supplemental jurisdiction over Allstate's state-law claims........ 19

H. Leave to amend should be granted liberally. ..................................................................... 20

VI. CONCLUSION.......................................................................................................................... 20

CERTIFICATE OF SERVICE............................................................................................................ 21

## TABLE OF AUTHORITIES

*Cases*

*Akin v. Q-L Invest, Inc.*, 959 F.2d 521 (5th Cir. 1992) ............................................................. 12, 14

*Allstate Indem. Co. v. Bhagat*, 164 F.4th 426 (5th Cir. 2026) ........................................... 13, 15, 19

*Allstate Ins. Co. v. Plambeck*, 802 F.3d 665 (5th Cir. 2015) ...................................................... 10, 12

*Allstate Ins. v. Benhamou*, 190 F. Supp. 3d 631 (S.D. Tex. 2016) ............................................. 6, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 6

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) ......................................... 6

*Commercial Metals Co. v. Chazanow*, No. 3:09-CV-0808-B, 2009 U.S. Dist. LX 107676 (N.D. Tex. 2009) ................................................................................................................... 9

*Cypress/Spanish Fort I, L.P. v. Prof'l Serv. Indus.*, 814 F.Supp.2d 698 (N.D. Tex. 2011) ........... 8

*Enochs v. Lampasas Cty.*, 641 F.3d 155 (5th Cir. 2011) ................................................................ 20

*Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278 (5th Cir. 1993) ....................................... 6

*Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278 (5th Cir. 2006) .................................... 6

*Foman v. Davis*, 371 U.S. 178 (1962) ....................................................................................... 20

*Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39 (Tex. 1992) ......................................... 18

*Juhl v. Airington*, 936 S.W.2d 640 (Tex. 1996) ......................................................................... 17

*Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) ...................................................... 6

*Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534 (5th Cir. 2007) ................................. 15, 17

*McNamara v. Bre-X Minerals, Ltd.*, 197 F. Supp. 2d 622 (E.D. Tex. 2001) ............................... 6

*Salinas v. United States,* 522 U.S. 52 (1997) .............................................................................. 15

*Scanlon v. Tex. A&M Univ.*, 343 F.3d 533 (5th Cir. 2003) ......................................................... 7

*Smith v. Cooper/T. Smith Corp.*, 886 F.2d 755 (5th Cir. 1989) ................................................... 14

*Tilton v. Marshall*, 925 S.W.2d 672 (Tex. 1996) ....................................................................... 17

*Triplex Communications v. Riley*, 900 S.W.2d 716 (Tex. 1995) ................................................. 17

*Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994) ........................................... 9, 13

*U.S. ex rel. Gentry v. Encompass Health Rehab. Hosp. of Pearland, L.L.C.*, 157 F.4th 758 (5th Cir. 2025) ........................................................................................................................ 9

*U.S. ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487 (S.D. Tex. 2003), *aff'd*, 111 F. App'x 296 (5th Cir. 2004) .................................................................................................... 6

*U.S. ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180 (5th Cir. 2009) ................................ 8

*U.S. ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204 (E.D. Tex. 1998) ........................................ 6

*United States v. Delgado*, 401 F.3d 290 (5th Cir. 2005) ........................................................ 10, 12

*United States v. Erwin*, 793 F.2d 656 (5th Cir. 1986) .................................................................. 10

*United States v. Posada-Rios*, 158 F.3d 832 (5th Cir. 1998) ........................................... 10, 14, 15

*United States v. Rosenthal*, 805 F.3d 523 (5th Cir. 2015) ........................................................ 10, 15

*Williams v. WMX Techs.*, 112 F.3d 175 (5th Cir. 1997) ............................................................. 7, 13

### Statutes

18 U.S.C. § 1341 ............................................................................................................................ 12
18 U.S.C. § 1962(c) ......................................................................................................................... 2
18 U.S.C. § 1962(d) ......................................................................................................................... 2
28 U.S.C. § 1367(c) ....................................................................................................................... 19

### Rules

FED. R. CIV. P. 12(b)(6) ................................................................................................................... 6
FED. R. CIV. P. 12(d) ....................................................................................................................... 7
FED. R. CIV. P. 15(a) ..................................................................................................................... 20
Fed. R. Civ. P. 9(b) ................................................................................................................. passim

v

## I.    INTRODUCTION

The Oneto Defendants[1] seek to dismiss Allstate's[2] claims by recasting themselves as arm's length readers of imaging studies. That is false. As alleged, the Oneto Defendants tailored radiology reports to conceal degenerative findings and used technical jargon to recast these conditions as traumatic injuries to inflate personal injury claims and deceive insurers. [Dkt. 1 ¶¶ 121-128, 209, 295-297]. Those reports transformed routine soft-tissue complaints into high-value claims for serious disc herniations and nerve impingements. [Dkt. 1 ¶¶ 125-128, 209, 295]. Allstate's 155-page Complaint, supported by a detailed appendix identifying 1,253 claims involving over $22 million in billed charges, alleges a sophisticated enterprise in which the Oneto Defendants knowingly participated. [Dkt. 1 ¶¶ 8, 382].

Dr. Miguel Oneto knew the MRIs the Khits sent his team were personal injury "liability cases." [Dkt. 1 ¶¶ 125, 127]. He instructed his radiologists to strip "degenerative" from their reports and substitute obscure technical terms. [Dkt. 1 ¶¶ 125-128, 209, 295, 356]. Those reports drove unnecessary referrals and treatments and inflated the personal injury claims submitted to Allstate. [Dkt. 1 ¶¶ 201, 206-210, 362-366]. And when subpoenaed in the underlying cases their records were supposed to support, the Oneto Defendants withheld documents and dodged testimony. [Dkt. 1 ¶¶ 221-223].

The Court should deny the motion for three reasons. First, Allstate pleaded its RICO and fraud claims with particularity by detailing the participants, the mechanics of the scheme, the

---

[1] Susan Fan, M.D., Julieta Oneto, M.D., Miguel Oneto, M.D., and Miguel Oneto, M.D., P.A. d/b/a QI & Interventions.

[2] Plaintiffs Allstate Insurance Company, Allstate Fire & Casualty Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, and Allstate County Mutual Insurance Company are collectively, "Allstate."

false representations in the medical reports and bills, the Oneto Defendants' knowledge and intent, the foreseeable use of the U.S. mail, and the resulting harm to Allstate. Second, the Oneto Defendants operated and managed the alleged RICO enterprise by advancing the fraudulent scheme through the reports they produced. Third, because the RICO claims survive and the state-law claims arise from the same fraudulent scheme, the Court should exercise supplemental jurisdiction over the related state-law claims in the interest of judicial economy.

## II.    NATURE AND STAGE OF PROCEEDINGS

Allstate asserts claims under civil RICO (18 U.S.C. § 1962(c)) and civil RICO conspiracy (18 U.S.C. § 1962(d)), common law fraud, conspiracy, money had and received, and unjust enrichment arising from Defendants' submission of fraudulent medical bills and records. [Dkt. 1]. The Oneto Defendants moved to dismiss on June 22, 2026. [Dkt. 15]. The parties stipulated that Allstate's deadline to respond is July 31, 2026. [Dkt. 18].

## III.   FACTUAL ALLEGATIONS

From July 2018 through December 2024, Defendants Luis Khit, D.C., and Alejandra Khit, D.C. operated ten healthcare entities in Austin and the Rio Grande Valley that processed personal injury patients through a predetermined treatment protocol designed to inflate insurance claims. [Dkt. 1 ¶ 1]. During this period, 1,253 claims were submitted to Allstate involving services allegedly provided by the Khit entities, with billed amounts over $22 million. [Dkt. 1 ¶ 8].

### A. In mid-2018, the Khits expanded their enterprise, opening Kay Medical clinics and partnering with QI&I radiologists for diagnostic imaging.

In mid-2018, the Khits owned and controlled multiple healthcare entities, including Khit

2

Chiropractic clinics, Insight, Kay Medical, and Spinal Decompression.[3] [Dkt. 1 ¶¶ 4-6, 49-66].

These entities served almost exclusively personal injury patients treating under letters of protection ("LOPs"), giving Defendants a direct financial interest in claim outcomes.[4] [Dkt. 1 ¶¶ 9, 134-136]. Two changes transformed the Khits' operations: (1) contracting with QI&I[5] to interpret imaging studies under Insight's name, and (2) forming Kay Medical to provide medical evaluations by nurse practitioners under the control of lay chiropractors. [Dkt. 1 ¶ 121].

### B. Central to the Khits' scheme was Insight's reliance on QI&I radiologists' "detailed" interpretations of diagnostic imaging.

Allstate alleges the Oneto Defendants were active, knowing participants in a scheme designed to misrepresent imaging findings to fraudulently inflate personal injury claims.

### 1. The Khits contracted with QI&I, relying almost exclusively on the individual Oneto Defendants to interpret scans billed through Insight.

In early 2018, Insight charged $2,100 per CT scan or MRI, increasing to $2,400 by Spring. [Dkt. 1 ¶ 122]. These charges covered only the technical component; the interpreting radiologist billed a separate charge for their professional "read." [Dkt. 1 ¶ 122]. In June, QI&I contracted with Insight to provide teleradiology services, and *Insight* paid QI&I a flat fee per

---

[3] Two entities do business as "Khit Chiropractic," Khit & Associates, PLLC and Khit Chiropractic & Rehabilitation, PLLC. [Dkt. 1 ¶¶ 49-50]. And two entities do business as "Insight," SKAK Investments, LLC and Insight Imaging Center, LLC. [Dkt. 1 ¶¶ 51-52]. "Kay Medical" is short for Kay Medical Center, PLLC, and "Spinal Decompression" is short for Spinal Decompression and Remodeling Clinic, PLLC.

[4] An LOP is a written agreement by a patient's personal injury attorney, promising to pay a healthcare provider from the proceeds of any settlement or recovery from the patient's tort claim or lawsuit. [Dkt. 1 ¶ 134].

[5] "QI&I" is short for Miguel Oneto, M.D., P.A. d/b/a QI & Interventions. During the period at issue, QI&I radiologists Miguel Oneto, M.D., Julieta Oneto, M.D., and Susan Fan, M.D. almost always interpreted imaging studies from Insight. [Dkt. 1 ¶¶ 123, 208]. Collectively, QI&I and its radiologists are referred to as "the Oneto Defendants."

study and billed patients a single global fee of $3,000 to $3,750 for each imaging study.[6] [Dkt. 1 ¶¶ 121-123, 124, 208, 210]. Beginning that summer, QI&I radiologists Miguel Oneto, Julieta Oneto, and Susan Fan interpreted nearly all Insight imaging, including x-rays. [Dkt. 1 ¶ 123]. By late 2018, Insight's referral forms for x-rays and MRIs often included the pre-printed statement "READ ONLY BY DR. ONETO" at the bottom. [Dkt. 1 ¶ 124].

After Luis Khit disclosed to Dr. Miguel Oneto that "all imaging studies performed for Insight were related to personal injury cases," Dr. Oneto created a "facility note" in QI&I's PACS[7] instructing QI&I radiologists as follows: "All MRIs are liability cases. Please describe, if present, disc herniations and bulges WITH measurements and effect on foramina and nerves. Customer wants 'detailed descriptions.' Degenerative changes should not be simplified, rather describe each level in detail." [Dkt. 1 ¶¶ 125-127, 295 (describing partial facility note); *see also* Dkt. 15-4 (complete facility note as Ex. D to the Oneto Defendants' Motion to Dismiss)].

### 2. The Khits asked QI&I radiologists to provide "detailed" interpretations of their scans to obscure degenerative findings, and QI&I complied.

In reading Insight scans, QI&I radiologists systematically omitted the word "degenerative" and other commonly known degeneration terms (e.g., "disc desiccation," and "loss of disc height"), substituting obscure technical terms to describe age-related findings to make it appear that patients' injuries were the result of recent trauma. [Dkt. 1 ¶¶ 127, 209].

QI&I radiologists prepared imaging reports on Insight's letterhead using templates that

---

[6] When billed separately, the charges associated with an MRI involve a technical component, which includes costs associated with the facility, equipment, and supplies used to perform the scan, as well as a professional component which covers the radiologist's fees for interpreting the scan and preparing a report. [Dkt. 1 ¶ 97 at n.1].

[7] QI&I uses its PACS (Picture Archiving and Communications System) program to access and review diagnostic imaging remotely. [Dkt. 1 ¶ 208].

4

avoided common radiological terminology, [Dkt. 1 ¶¶ 174, 209], following the facility note's directive to produce reports that systematically misrepresented chronic findings as acute, traumatic injuries. [Dkt. 1 ¶¶ 127, 209, 295, 362].

### 3. Providers routinely relied on the Oneto Defendants' "detailed" interpretations to justify further referrals and procedures.

Khit's providers relied on the imaging reports to justify unnecessary treatment, referrals to pain management, spinal decompression therapy, and orthopedic consultations—all to inflate the value of personal injury claims. [Dkt. 1 ¶¶ 201, 206-212, 361]. The chiropractors used the Oneto Defendants' MRI reports to support templated narratives that patients were "progressing slower than expected" and required additional interventions. [Dkt. 1 ¶¶ 201, 211-212].

The Oneto Defendants knew their reports would be included in settlement demand packages sent by personal injury attorneys. [Dkt. 1 ¶¶ 365-366]. After all, QI&I's facility notes for Insight highlighted that all imaging studies for Insight were "liability cases." [Dkt. 1 ¶¶ 125, 127]. Defendants intended for Allstate to rely on these fraudulent reports in evaluating and paying claims. [Dkt. 1 ¶¶ 368, 416-417].

### 4. The Oneto Defendants sought to conceal the Khits' scheme by seeking to evade discovery in underlying personal injury cases.

When subpoenaed in underlying personal injury litigation, the Oneto Defendants refused to produce the Insight-QI&I contract and other critical documents, including the complete facility note, claiming "trade secrets," yet later attached both to their motion to dismiss. [Dkt. 1 ¶ 210 n.32; *but see* Dkt. 15-3 & 15-4]. This evasive conduct supports an inference that the Oneto Defendants knew of the enterprise's fraud and sought to conceal their role.

### C.  The Oneto Defendants' participation in the scheme harmed Allstate.

From July 1, 2018 through December 31, 2024, Allstate paid $2,090,837.76 attributable to Insight's charges to settle the claims. [Dkt. 1-1 at 88]. Relying on false documents—including

the Oneto Defendants' imaging reports—Allstate evaluated and settled claims. [Dkt. 1 ¶¶ 368, 421]. Insight paid the Oneto Defendants for their fraudulent reports, which enabled the enterprise to extract inflated payments from Allstate, which were used to pay amounts to Defendants to which they were not entitled. [Dkt. 1 ¶¶ 363, 370, 379-381].

## IV.    STANDARD OF REVIEW

Rule 12(b)(6) motions are disfavored and rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). The Court accepts well-pleaded facts as true, draws reasonable inferences for the plaintiff, and may not resolve factual disputes if the allegations are plausible. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007). A complaint may proceed even if proof or recovery appears unlikely, and leave to amend curable defects should be liberally granted. *Twombly* at 556; *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284-85 (5th Cir. 1993).

Rule 9(b) requires only enough particularity to give fair notice and permit a meaningful response, judged practically by Rule 9(b)'s purpose. FED. R. CIV. P. 9(b); *U.S. ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487, 494 (S.D. Tex. 2003. Less detail is required where key facts lie within the defendant's knowledge. *Allstate Ins. v. Benhamou*, 190 F. Supp. 3d 631, 642 (S.D. Tex. 2016). And courts avoid rigid pre-discovery application in complex, long-running schemes. *U.S. ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204, 206-07 (E.D. Tex. 1998); *McNamara v. Bre-X Minerals, Ltd.*, 197 F. Supp. 2d 622 (E.D. Tex. 2001). If Rule 9(b) is not met, leave to amend should be freely granted. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006).

## V.    ARGUMENT

Allstate's Complaint details the Oneto Defendants' role in a coordinated scheme to

6

inflate medical bills.

### A.  The Court should not consider facts or allegations outside the Complaint.

The incorporation-by-reference doctrine does not permit the Court to consider the

deposition transcripts and contract exhibits the Oneto Defendants attached to their Motion. [Dkt.

15 at 9-10, 18-20]. The Court must accept well-pleaded facts as true, draw all reasonable

inferences for Allstate, and limit review to the Complaint and any document it references as

*central* to the claims.[8] *Scanlon v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

The Oneto Defendants' exhibits fall outside the narrow exception and ask the Court to

resolve factual disputes about knowledge, intent, and conduct—issues the Court cannot decide at

the pleading stage. Considering the exhibits would require conversion under Rule 12(d), which

this Court cannot grant before discovery. FED. R. CIV. P. 12(d).

### B.  Allstate's Complaint satisfies Rule 9(b).

As shown below, Allstate's pleading details the who, what, when, and where of the fraud

and thus satisfies Rule 9(b). *See Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997).

### 1.  The Complaint alleges a detailed fraudulent scheme.

The Complaint details the Oneto Defendants' participation in the fraud as follows:

- **Who:** The Oneto Defendants—Susan Fan, M.D., Miguel Oneto, M.D., Julieta Oneto, M.D., through QI&I—prepared false and misleading radiology reports as part of the fraudulent scheme. [Dkt. 1 ¶¶ 35-37, 123, 209, 389(l)-(m)].

- **What:** The Oneto Defendants prepared radiology reports on Insight's letterhead omitting degenerative findings and using technical jargon to recast chronic conditions as acute traumatic injuries. [Dkt. 1 ¶¶ 127, 209, 295, 389(m)]. These false reports misrepresented the nature and cause of patients' conditions and were used to justify unnecessary treatments, referrals, and inflated bills. [Dkt. 1 ¶¶ 211, 389(m), 403].

---

[8] The partial facility note referenced in the Complaint is sufficient and does not require review of extraneous materials. [Dkt. 1 ¶¶ 125, 295, 389(l)-(m), 394(k)-(l)]. It is unclear at this pre-discovery stage whether the version of the facility note attached to the Oneto Defendants' motion to dismiss was the only version used during the relevant time frame.

- **When:** The fraudulent scheme began in mid-2018 and continued through December 31, 2024. [Dkt. 1 ¶¶ 6, 121]. During this period, there were 1,253 claims submitted to Allstate involving services allegedly provided by the Khit entities for billed charges exceeding $22 million. [Dkt. 1 ¶ 8]. Appendix A to the Complaint identifies each claim, including the date of service, the date demand packages were sent to Allstate, and the date Allstate mailed checks to settle the claims. [Dkt. 1 ¶¶ 403-404; Dkt. 1-1]. For Insight claims, Appendix A-2 reflects there were 1,225 claims submitted to Allstate for billed charges of nearly $6 million. [Dkt. 1-1 at 64-88].

- **Where:** The false radiology reports were prepared by the Oneto Defendants in Texas and Florida, transmitted electronically to Insight, and included in demand packages sent by claimants' attorneys to Allstate. [Dkt. 1 ¶¶ 35-37, 208-209, 366, 403-404, 408]. Allstate then mailed settlement checks to the attorneys' offices, and the attorneys paid the Khit-owned entities from the settlement proceeds. [Dkt. 1 ¶¶ 369-370, 404].

The Complaint also explains how Luis Khit told QI&I that all Insight MRIs were "liability cases" and instructed QI&I to have radiologists use technical terms while avoiding "degenerative" and similar terms. [Dkt. 1 ¶¶ 127, 209, 295-297, 403(l); Dkt. 15 at 14]. QI&I communicated that instruction through a facility note. [Dkt. 1 ¶¶ 121-128]. Dr. Miguel Oneto admitted he authored the note after learning that all Insight imaging studies were personal injury cases. [Dkt. 1 ¶¶ 125, 127]. The Oneto Defendants prepared reports that omitted degenerative findings, supported unnecessary treatment and referrals, inflated claim values, and appeared in demand packages submitted to Allstate. [Dkt. 1 ¶¶ 209, 365-366, 368, 370, 379-381].

### 2. Rule 9(b) does not require claim-by-claim detail where a systematic scheme is alleged.

Rule 9(b) does not require Allstate to plead every report, mailing, and claim in isolation. "When a systematic scheme involves numerous transactions, requiring claim-by-claim detail would impose an un8workable pleading standard." *U.S. ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 189-90 (5th Cir. 2009); *Cypress/Spanish Fort I, L.P. v. Prof'l Serv. Indus.*, 814 F.Supp.2d 698, 711-12 (N.D. Tex. 2011) (citing *Grubbs* for the same 9(b) standard

when evaluating civil RICO claims); *Commercial Metals Co. v. Chazanow*, No. 3:09-CV-0808-B, 2009 U.S. Dist. LX 107676, at *13-14 (N.D. Tex. 2009) (same).

Allstate alleges the scheme's mechanics and provides enough detail about the relevant insurance claims: Appendix A lists 1,253 Khit-entity claims with claim numbers, service dates, and amounts paid, while Appendix A-2 further details Insight claims, including initial service dates, totals billed by Insight, and amounts Allstate attributed to Insight in settlement. [Dkt. 1 ¶¶ 8, 381-382; Dkt. 1-1 at 64-88]. The Oneto Defendants interpreted nearly all Insight-billed imaging, and the Complaint ties the false statements to a facility note instructing radiologists to obscure any degenerative findings by "describ[ing] each level in detail." [Dkt. 1 ¶¶ 123, 125, 127; *see also* Dkt. 15 at 13, Dkt. 15-4 (complete facility note)]. Appendix B attaches exemplar QI&I-authored MRI reports and Insight bills sent to patients' attorneys. [Dkt.1-2 at 38-40, 68-69]. This specificity obviates any need to "make guesses to fill in the blanks." *U.S. ex rel. Gentry v. Encompass Health Rehab. Hosp. of Pearland, L.L.C.*, 157 F.4th 758, 762 (5th Cir. 2025) (quotation omitted).

### 3.   The Complaint alleges the Oneto Defendants' knowledge and intent.

The Complaint supports knowledge and intent with specific facts. Rule 9(b) permits intent and knowledge to be averred generally so long as the facts support a plausible inference of fraudulent intent. FED. R. CIV. P. 9(b); *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). Rule 9(b) does not require an express admission of intent. *Id*.

Dr. Miguel Oneto knew Insight MRIs were personal injury cases, authored the facility note, and instructed radiologists to avoid simplifying degenerative findings. [Dkt. 1 ¶¶ 125, 127]. Susan Fan saw the facility note in QI&I's PACS. [Dkt. 1 ¶ 125]. The Oneto Defendants followed it by systematically omitting "degenerative" from their reports, which were used to support

inflated personal injury demands. [Dkt. 1 ¶¶ 127, 201, 206-212, 295, 362].

### C.  Allstate adequately pleads RICO claims.

The Oneto Defendants were not passive image readers; they allegedly helped conceal degenerative findings through coordinated reporting practices. That conduct plausibly satisfies the operation-or-management requirement under *Reves*.

### 1.  The Oneto Defendants participated in the conduct of the enterprise's affairs.

To plead a RICO violation, the plaintiff must show: (1) the existence of an enterprise affecting interstate commerce, (2) the defendant's employment or association with the enterprise, (3) the defendant's participation in conducting the enterprise's affairs, and (4) that participation was through a pattern of racketeering activity. *United States v. Posada-Rios*, 158 F.3d 832, 855 (5th Cir. 1998) (citing *United States v. Erwin*, 793 F.2d 656, 670 (5th Cir. 1986)). *Reves* requires "participation in the operation or management of the enterprise itself"—not significant control— to "take part in" the enterprise's affairs suffices. *Id*. at 856; *United States v. Rosenthal*, 805 F.3d 523, 532 (5th Cir. 2015). Lower-rung participants who act under upper management's direction can satisfy the standard. *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 674-75 (5th Cir. 2015); *United States v. Delgado*, 401 F.3d 290, 297 (5th Cir. 2005).

The Oneto Defendants' contention that they merely provided "ordinary professional assistance" as independent contractors—without roles in management, referrals, clinic operations, supervision, transportation, or billing, [Dkt. 15 at 10-11], ignores the Complaint's detailed allegations. The Complaint alleges more than an arm's-length service relationship: the Oneto Defendants helped conceal degenerative findings through misleading reports. Allstate alleges:

- **The Oneto Defendants knowingly received and followed instructions designed to perpetrate fraud.** Insight contracted with QI&I and Luis Khit told

10

QI&I that all MRIs were "liability cases." [Dkt. 1 ¶¶ 121, 125, 389(l)]. He directed the radiologists to avoid the word "degenerative" and use other technical terms instead. [Dkt. 1 ¶¶ 125, 127, 389(l)]. QI&I relayed these directives through a facility note. [Dkt. 1 ¶¶ 125, 389(l)]. Dr. Miguel Oneto admitted he authored it after Luis Khit disclosed the personal injury nature of all studies. [Dkt. 1 ¶ 127].

- The Oneto Defendants issued reports on Insight's letterhead that concealed degenerative changes to suggest traumatic injury. Consistent with the facility note, the reports omitted the word "degenerative" even for patients over 65, where such findings are expected. [Dkt. 1 ¶¶ 127, 209, 295, 389(m)]. Instead, the reports often identified small disc "herniations" using obscure technical language. [Dkt. 1 ¶¶ 127, 295].

- The Oneto Defendants' false reports were the scheme's linchpin because they justified the enterprise's predetermined treatment-and-referral protocol that inflated claim values. [Dkt. 1 ¶¶ 211, 389(m)]. The reports drove this by converting soft-tissue complaints into higher-value herniation and nerve-impingement claims. [Dkt. 1 ¶¶ 201, 206-210].

- **The Oneto Defendants prepared boilerplate reports instead of individualized assessments.** They electronically signed multiple patients' reports within one to two minutes of each other, and reports signed minutes apart repeated identical findings, confirming template language rather than patient-specific analysis. [Dkt. 1 ¶¶ 326-328].

These allegations plausibly show participation, not routine professional services. Dr. Miguel Oneto authored the facility note that directed how findings should be described. [Dkt. 1 ¶¶ 125, 127]. The Oneto Defendants allegedly followed that directive by using technical terminology that masked chronic changes and supported inflated settlements.

That is not routine professional assistance. The Oneto Defendants tailored their services to the scheme's fraudulent aim by misrepresenting findings, conduct that exceeds the "ordinary professional assistance" *Reves* deems insufficient. [Dkt. 1 ¶¶ 121–128, 209]. Because the reports justified downstream referrals and treatments, they inflated claim values. [Dkt. 1 ¶¶ 201, 206-212, 361]. The Oneto Defendants knew their reports would be used to support fraudulent personal injury claims and wanted Allstate to rely on them. [Dkt. 1 ¶¶ 365-366, 416-417].

And the Oneto Defendants participated in the enterprise's decision making. Luis Khit

11

testified that Dr. Miguel Oneto helped set Insight's MRI charges—a management function, not passive service work. [Dkt. 1 ¶ 210]. By dictating how imaging findings would be reported, the Oneto Defendants helped direct the enterprise's affairs. That conduct satisfies the *Reves* "operation or management" standard.

Participants who implement upper-management directives, like the Oneto Defendants, may engage in operation-or-management without formal leadership titles. *Plambeck*, 802 F.3d at 674-75. Liability also reaches lower-rung participants who implement and enforce upper management's directives that keep the scheme going. *Id*. A defendant need not hold a formal leadership title to "participate in the conduct" of the enterprise. *Delgado*, 401 F.3d at 297-98.. It is irrelevant that the Oneto Defendants claim to have played no role in forming or formally managing any Khit entity.

The Oneto Defendants' reliance on *Benhamou* is misplaced. *Allstate Ins. Co. v. Benhamou,* 190 F.Supp.3d 631 (S.D. Tex. 2016). *Benhamou* is different: the Complaint alleges the Oneto Defendants knew the purpose of the reporting instructions, followed them, and generated reports that advanced the alleged fraud. Those allegations plausibly show participation in the enterprise's affairs.

### 2.  Allstate adequately alleges mail fraud predicate acts.

The Oneto Defendants need not have personally mailed anything to Allstate; that is not what the statute requires. Mail fraud under 18 U.S.C. § 1341 involves: (1) a scheme to defraud, (2) use of the mails in furtherance of the scheme, and (3) the defendant's knowing participation. *Akin v. Q-L Invest, Inc.*, 959 F.2d 521, 533 (5th Cir. 1992). Foreseeable mailings suffice. *Id*.

The Oneto Defendants knowingly prepared fraudulent radiology reports that they knew would be mailed to Allstate by personal injury attorneys. [Dkt. 1 ¶¶ 365-366, 403, 404]. Allstate

12

mailed settlement checks in reliance on the fraudulent reports. [Dkt. 1 ¶¶ 369, 404]. These allegations establish mail fraud predicate acts.

Rule 9(b) requires the who, what, when, where, and how of the fraud, while conditions of mind may be alleged generally. *See Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). As detailed above, the Complaint lays out the scheme, identifies the false reports and the participants, specifies the timing and channels of mailing, and explains Allstate's reliance, thereby satisfying Rule 9(b).

The Complaint also pleads materiality, knowledge, and intent. [Dkt. 1 ¶¶ 403, 415-420]. While these conditions of mind may be alleged generally under Rule 9(b), the Complaint provides ample factual support for the inference of fraudulent intent. *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994), *cert. denied*, 118 S. Ct. 412 (1997).

*Bhagat* confirms that Allstate has met its burden here. There, the Fifth Circuit held that Allstate's complaint sufficiently alleged the "who, what, when, where, and how" of the alleged fraud where the complaint included a detailed appendix listing the specifics of each allegedly fraudulent billing. *Allstate Indem. Co. v. Bhagat*, 164 F.4th 426, 434 (5th Cir. 2026). The court rejected the defendants' argument that the complaint failed to satisfy Rule 9(b), holding that the plaintiffs adequately pled their RICO claims. *Id*. As in *Bhagat*, Allstate supplied a detailed factual narrative and claim appendix identifying the claims, service dates, entity providers, billed amounts, paid amounts, and the dates of mailed settlement checks. [Dkt. 1 ¶¶ 1-439; Dkt. 1-1]. This level of detail meets the Rule 9(b) standard.

The Complaint does not allege that the Oneto Defendants failed to review the images; it alleges they manipulated their reports—using obscure technical language and omitting degenerative findings—to make ordinary, age-related changes appear traumatic. [Dkt. 1 ¶¶ 127,

13

209, 295, 389(m)]. That is the fraud at issue with the Oneto Defendants.

The Complaint also alleges that, in practice, the Oneto Defendants avoided the term "degenerative" and used jargon to mask the true nature of the findings [Dkt. 1 ¶ 127]. The question is not whether the reports were detailed, but whether they concealed degenerative changes by sidestepping widely understood terminology. The Complaint adequately pleads mail fraud predicate acts with particularity.

### 3. The Complaint alleges a continuing pattern of racketeering activity.

The alleged end of the Insight-QI&I relationship does not defeat the pattern of mail fraud. A pattern is at least two related predicate acts that amount to or pose a threat of continued criminal activity. *Akin*, 959 F.2d at 533; *Smith v. Cooper/T. Smith Corp.*, 886 F.2d 755, 756 (5th Cir. 1989). Continuity may be shown by a regular way of conducting business or participation in an ongoing enterprise. *Akin*, 959 F.2d at 533.

The Oneto Defendants interpreted Insight imaging from mid-2018 through December 2024. [Dkt. 1 ¶¶ 121, 128]. In six years, they prepared fraudulent reports in 1,225 matters totaling nearly $6 million in Insight charges. [Dkt. 1-1 at 64-88; *see also* Dkt. 1 ¶¶ 8, 382 (broadly discussing Appendix A's 1,253 total claims from any of the Khit entities). The alleged multi-year course of systematic conduct across hundreds of claims pleads continuity, regardless of whether the relationship later ended. *Id.* at 533; *see also Cooper/T. Smith Corp.*, 886 F.2d at 756.

### 4. Allstate alleges a valid RICO conspiracy claim.

For the same reasons detailed above, Allstate adequately pleads that the Oneto Defendants conspired to violate RICO. *Reves* applies to substantive RICO claims, not § 1962(d) conspiracies. *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998). RICO conspiracy

follows ordinary conspiracy principles: a defendant need only agree to the objective of committing a substantive RICO offense and knowingly participate—no personal operation or management is required. *Id*. at 857-858; *Salinas v. United States,* 522 U.S. 52, 63-66 (1997); *Rosenthal*, 805 F.3d at 532..

The Oneto Defendants agreed to the enterprise's objective and knowingly participated in the scheme. [Dkt. 1 ¶¶ 412-413]. The facility-note allegations support agreement and knowing participation: Dr. Miguel Oneto knew the studies were liability cases and directed reporting language that allegedly concealed chronic findings. [Dkt. 1 ¶¶ 121-128]. The Oneto Defendants followed these directions in their reports that systematically misrepresented imaging findings. [Dkt. 1 ¶¶ 127, 209, 295]. They knew their reports would be used to support fraudulent personal injury claims and intended for Allstate to rely on them. [Dkt. 1 ¶¶ 365-366, 416-417].

Under the traditional conspiracy standard governing § 1962(d) claims, these allegations more than suffice. The Oneto Defendants did not need to operate or manage the enterprise; their alleged agreement and knowing participation suffice for conspiracy. *See Posada-Rios*, 158 F.3d at 857-58; *Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 537-38 (5th Cir. 2007).

### D.  Allstate states claims under Texas common law.

The same pleaded facts also support Allstate's Texas common-law claims.

#### 1.  The Oneto Defendants' pattern of racketeering gives rise to common-law fraud claims.

Texas common-law fraud requires: (1) a material misrepresentation, (2) that was false when made, (3) the speaker knew the representation was false or made it recklessly without knowledge of its truth, (4) the speaker made the representation with the intent that the plaintiff act on it, (5) the plaintiff relied on the representation, and (6) the plaintiff suffered injury as a result. *Bhagat*, 164 F.4th at 435, n. 5.

15

The Complaint details each element through the same scheme discussed above: the Oneto Defendants made material misrepresentations by omitting the word "degenerative" and using technical terminology to conceal chronic findings, creating the false impression that all abnormalities resulted from traumatic accidents. [Dkt. 1 ¶¶ 127, 209, 295-297, 403, 416].

Knowledge is alleged by the facility note and the Oneto Defendants' awareness that Insight's studies were "liability cases." [Dkt. 1 ¶¶ 125, 127]. They intended for Allstate to rely on their reports in evaluating and settling personal injury claims. [Dkt. 1 ¶¶ 365-366, 416-417, 420]. Allstate relied, paying settlements based on demand packages containing the Oneto Defendants' reports, and suffered injury by paying inflated amounts. [Dkt. 1 ¶¶ 368, 379–381, 421].

The Complaint alleges a systematic pattern of fraudulent reporting and provides examples of false representations, including Dr. Susan Fan's report that omitted degenerative findings. [Dkt. 1 ¶¶ 295-297]. Additional exemplar reports are attached to the Complaint in Appendix B. [Dkt. 1-2 at 38-40]. This level of detail satisfies Rule 9(b).

The Complaint's allegations identify the misrepresentations, falsity, knowledge, intent, reliance, and injury. The alleged misrepresentations include: (1) the patients sustained severe injuries beyond soft tissue injuries. [Dkt. 1 ¶ 416(a)]; (2) the findings reported on Insight imaging reports by the Oneto Defendants accurately represented conditions consistent with traumatic injuries resulting from the accidents at issue; [Dkt. 1 ¶ 416(l)]; and (3) referrals to Insight for MRIs were reasonable and necessary. [Dkt. 1 ¶ 416(k)]. The Complaint alleges that these representations were false because the Oneto Defendants omitted mention of degenerative findings and used obscure technical terms to make it appear that all noted abnormalities were the result of traumatic injury, when in fact the findings represented chronic, age-related changes.

16

[Dkt. 1 ¶¶ 127, 209, 295, 389(m)]. The Oneto Defendants' alleged concealment of the facility note and related contract documents also supports fraudulent intent. [Dkt. 1 ¶¶ 210 n.32, 417].

The Complaint also alleges that the Oneto Defendants intended Allstate to rely on misrepresentations when paying settlements. [Dkt. 1 ¶¶ 420, 426]. Allstate relied on the misrepresentations and paid inflated settlements attributable to the fraudulent charges. [Dkt. 1 ¶¶ 368, 381-382, 421]. Texas law does not require that the fraudulent misrepresentation be made directly to the plaintiff. It is sufficient if the misrepresentation is communicated through an intermediary and the defendant intended the plaintiff to rely on it. Here, the Oneto Defendants provided false reports to the Khit entities and claimants' attorneys knowing that the reports would be submitted to Allstate and that Allstate would rely on them in evaluating and settling claims. [Dkt. 1 ¶¶ 365-366, 420]. For these reasons, the Complaint adequately pleads common law fraud against the Oneto Defendants.

### E. Allstate adequately alleges facts to state a claim for conspiracy to commit common-law fraud.

A civil conspiracy requires: (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as the proximate result. *Moody Nat'l Bank, N.A.*, 248 F. App'x at 538 (citing *Triplex Communications v. Riley*, 900 S.W.2d 716, 719-20 (Tex. 1995); *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996). Because conspiracy to defraud is a derivative tort that includes an underlying claim of common law fraud, if the plaintiff fails to adequately plead fraud, the court must dismiss the conspiracy claim as well. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).

Because the Complaint adequately pleads fraud, the derivative conspiracy claim survives. Beginning in mid-2018, Defendants agreed to defraud Allstate through false statements about injury severity and treatment need. [Dkt. 1 ¶ 424]. The alleged object was to defraud Allstate,

17

and each Defendants' mind met and agreed on this course of action. [Dkt. 1 ¶ 425]. As to the Oneto Defendants, the Complaint alleges that Insight contracted with QI&I, Luis Khit identified the studies as "liability cases," QI&I directed radiologists to avoid degenerative terminology, and the Oneto Defendants knowingly followed those instructions. [Dkt. 1 ¶¶ 121, 125, 127, 389(l)-(m)]. These facts plausibly plead an agreement to defraud.

### F. Allstate adequately states claims for unjust enrichment and money had and received.

To establish unjust enrichment, the plaintiff must show that the defendant obtained a benefit from the plaintiff by fraud, duress, or taking undue advantage, and that it would be unconscionable for the defendant to retain the benefit. *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41-42 (Tex. 1992). QI&I allegedly received fees derived from settlements Allstate paid in reliance on the Insight reports. For each MRI interpretation, QI&I received a flat fee of about $50. [Dkt. 1 ¶ 208]. These fees came from settlements Allstate paid in reliance on the false and misleading radiology reports. [Dkt. 1 ¶¶ 368-370, 433-434].

The Oneto Defendants secured those fees by preparing reports that concealed degenerative findings and inflated personal-injury settlement values. [Dkt. 1 ¶¶ 125, 127, 209, 389(l)-(m), 432-433]. It would be unconscionable for them to retain fees from the fraudulent reporting scheme. [Dkt. 1 ¶¶ 430-434]. As healthcare providers, they took undue advantage of Allstate by manipulating medical reports in a manner designed to deceive. [Dkt. 1 ¶ 432].

Unjust enrichment does not require direct payment from the plaintiff to the defendant. It is sufficient if the defendant obtained a benefit derived from payments made by the plaintiff. Here, QI&I was paid by Insight, and Insight's charges for MRIs were included in the bills submitted to Allstate and paid by Allstate through settlement checks mailed to claimants' attorneys. [Dkt. 1 ¶¶ 208-210, 368-370, 434]. This is sufficient to plead unjust enrichment.

To maintain a claim for money had and received, the plaintiff must establish that the defendant holds money which in equity and good conscience belongs to the plaintiff. *Bhagat*, 164 F.4th at 436. The claim is equitable and prevents unjust enrichment. *Id.* While the plaintiff need not show that the defendant acquired the money through fraud or duress, it must allege a lack of good faith in the acceptance of the funds. *Id.*

The Complaint alleges funds derived from Allstate's payments and lack of good faith. First, QI&I was paid $50 per MRI by Insight for the Oneto Defendants' interpretation services. [Dkt. 1 ¶ 208]. Insight's charges for MRIs were included in bills submitted to Allstate as part of personal injury claims. [Dkt. 1 ¶¶ 208-210, 368-370]. Allstate paid settlement amounts that included charges attributable to Insight's MRIs, and Insight in turn paid QI&I. [Dkt. 1 ¶¶ 368-370, 437-438]. Second, they lacked good faith because they were paid, knowing their reports would overstate injury claims. [Dkt. 1 ¶¶ 434, 437-439].

The Oneto Defendants argue that the alleged payments are contract payments from Insight for radiology services and not funds traceable from Allstate to the Oneto Defendants. [Dkt. 15 at 21]. But Insight's payments to QI&I came from the inflated settlements Allstate paid. The Oneto Defendants enabled Insight to bill inflated charges for MRIs, and those charges were paid by Allstate. The scheme ties QI&I's fees to Allstate's settlement payments.

### G. The Court should retain supplemental jurisdiction over Allstate's state-law claims.

Allstate has pleaded valid RICO claims against the Oneto Defendants, so the Court has and should exercise supplemental jurisdiction over the related state-law claims. But even if the Court were to dismiss the RICO claims, supplemental jurisdiction would be appropriate. Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over state-law claims if: (1) the claim raises a novel or complex issue of state law; (2) the claim

19

substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Enochs* does not impose a bright-line dismissal rule; supplemental jurisdiction remains discretionary. *Enochs v. Lampasas Cty.*, 641 F.3d 155, 163 (5th Cir. 2011). Here, retention is appropriate because the state-law claims arise from the same alleged scheme and present familiar Texas-law issues. All claims arise from the alleged fraudulent scheme, involve overlapping parties, and turn on the same core conduct. For these reasons, the Court should retain supplemental jurisdiction over Plaintiffs' state-law claims.

### H.  Leave to amend should be granted liberally.

If the Court grants any portion of the motion, it should allow leave to amend.  Rule 15(a) directs courts to "freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a). Absent a valid reason—such as undue delay, bad faith, repeated failure to cure, undue prejudice, or futility—denial of leave is improper. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Consistent with *Foman,* the Fifth Circuit presumes amendments should be permitted and reverses denials that are not supported by an adequate explanation. *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 478 (5th Cir. 2018) (quotation omitted). While Allstate maintains that the Complaint is sufficient, it respectfully requests leave to amend if the Court identifies any deficiency.

## VI.    CONCLUSION

The Court should deny the motion to dismiss for the reasons above. If it is inclined to grant any portion, the Court should allow leave to amend.

Respectfully submitted,

**KNOX RICKSEN LLP**

*/s/ Laura Sherry*
Laura Sherry – Attorney in Charge
Texas State Bar No. 24056203
lrs@knoxricksen.com
Katherine Frank
Texas State Bar No. 24105630
kf@knoxricksen.com
Erin K. Holmes
Texas State Bar No. 24043732
ekh@knoxricksen.com
3626 North Hall Street (Two Oak Lawn)
Suite 610-K33
Dallas, Texas 75219
Tel.: (469) 887-1760
Fax: (469) 887-1765

***ATTORNEYS FOR PLAINTIFFS***


## CERTIFICATE OF SERVICE

I certify that on July 31, 2026 a true and correct copy of Plaintiffs' Response Opposing the Oneto Defendants' Motions to Dismiss was served on all counsel of record electronically via the Court's CM/ECF system and served via email upon all parties.

/s/ *Laura Sherry*
Laura Sherry

21