**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, and ALLSTATE COUNTY MUTUAL INSURANCE COMPANY,** | § | |
| ***Plaintiffs,*** | § | |
| **v.** | § | **Civil Action No. 1:26-CV-543-ADA-M** |
| **KHIT CHIROPRACTIC AND REHABILITATION, PLLC, KHIT & ASSOCIATES, PLLC D/B/A KHIT CHIROPRACTIC & WELLNESS CENTER, SKAK INVESTMENTS, LLC D/B/A INSIGHT DIAGNOSTIC AND IMAGING CENTER, LLC, INSIGHT IMAGING CENTER, LLC, KAY MEDICAL CENTER, PLLC, SPINAL DECOMPRESSION AND REMODELING CLINIC, PLLC, ELKAY ENTERPRISES, LLC D/B/A ELKAY TRANSPORT, IMPACT PROFESSIONAL SERVICES, LLC, KHIT PROPERTY MANAGEMENT, LLC, MIGUEL ONETO, M.D., P.A. D/B/A QI & INTERVENTIONS, LUIS KHIT, D.C., ALEJANDRA KHIT, D.C., ANNA GITTINS, ARTURO RESENDEZ, SUSAN FAN, M.D., MIGUEL ONETO, M.D., JULIETA ONETO, M.D., SANNICHIE QUAICOE, M.D., WILLIAM DONOVAN, M.D., JOSE NADAL, D.C., LIBRADO TORRES, D.C., JOHN GLADE, D.C., LIZ MOLINA, D.C., REYNALDO AMADOR, D.C., DEBBIE RIVERA, D.C., AND JONATHAN HERNANDEZ, D.C.,** | § | |
| ***Defendants.*** | § | |

**<u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

1. After years of investigating, Allstate can only repeat conclusory allegations that the Teleradiologists used "technical jargon" to conceal degenerative findings and recast chronic, age-related conditions as traumatic injuries. The Complaint never alleges the terminology is wrong, inaccurate, or inconsistently reported, and Allstate's own exhibits show the very terms it claims were hidden are in the reports. The "facility note" Allstate calls the linchpin of its concealment theory says the opposite of what the Complaint alleges: instructing radiologists to ***give more detail*** about degenerative findings, not less. Allstate's fraud allegations remain a collective recitation, never identifying which Teleradiologist made a false statement, when, or why it was false.

2. Nor has Allsate plausibly alleged any Teleradiologist had "some part in directing" enterprise affairs; following customer formatting preferences and setting one's own fee schedule is ordinary vendor conduct. The mail fraud predicate fails for want of any particularized allegation that a Teleradiologist knew reports would reach Allstate. The state-law fraud, conspiracy, unjust enrichment, and money-had-and-received claims fail alongside Allstate's RICO claims.

## I. ARGUMENT & AUTHORITIES

### A. <u>The Facility Note Contradicts the Complaint and Controls.</u>

3. Allstate's theory rests on a facility note instructing QI&I radiologists to omit the word "degenerative" to make ordinary, age-related changes appear traumatic. Dkt. 21 at 18. That allegation is false, and the Response does not deny it. Although the note is central to the Complaint, Dkt. 1, ¶¶ 125, 127, 209, 295, Allstate quotes only truncated fragments ("Please descr…" and "Degenerative changes should n…"). The complete note says the opposite: "Degenerative changes should not be simplified, rather describe each level in detail." Dkt. 15-2. Allstate does not dispute that the complete note fails to instruct concealment of any chronic findings, arguing only that the

Court cannot consider it and suggesting some other version might exist. Dkt. 21 at 12, n.8.

4. The Fifth Circuit permits consideration of documents referenced by and central to the complaint, and the document controls where it contradicts the pleading. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) ("[T]he exhibit and not the allegation controls."); *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). The full note therefore removes as a well-pleaded fact the allegation QI&I radiologists were told to omit "degenerative" or conceal chronic findings. Properly read, the note reflects a preference for complete reporting, not a predetermined diagnosis or opinion on causation. It did not instruct the Teleradiologists to diagnose absent abnormalities, exaggerate imaging findings, attribute degenerative conditions to trauma, or otherwise alter their independent medical judgment; it asked only that findings actually present be described in detail rather than summarized.

5. The radiology reports themselves confirm this is exactly how the note was implemented. Dkt. 1-2 at 39-40. Instead of omitting or minimizing the degeneration, QI&I reports describe findings in detail, including affected spinal levels and associated anatomical changes, consistent with the note's instruction. The terminology actually visible in the QI&I report – loss of disc height, broad-based disc herniations measured in millimeters, and neural-foraminal narrowing – are recognized radiologic descriptors, not terminology QI&I invented. Dkt. 1-2 at 39-40. The note shows QI&I sought complete reports, not inaccurate ones, and its radiologists were expected to disclose pre-existing abnormalities. The contemporaneous reports further corroborate the facility note and directly refute Allstate's characterization of the note. *Id*. Allstate's speculation about another version is not a well-pleaded fact: the Complaint describes one PACS template, and testimony confirms one process. Dkt. 1, ¶¶ 125, 295; Dkt. 15-1 at 36:13-21. Tellingly, Allstate's response to the Khit Defendants' 12(b) motion attributes the "avoid the word degenerative"

instruction to oral directives by Luis Khit – not a note authored by Dr. Oneto – contradicting its theory that the note was the vehicle of concealment. Dkt. 19 at 15-16, 21; *see* Dkt. 21 at 10.

**B. <u>Allstate Fails to Plead Fraud with the Particularity Rule 9(b) Requires.</u>**

6. Rule 9(b) governs both RICO and state-law fraud claims, and the Court need not accept "threadbare recitals . . . supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Williams v. WMX Techs.,* 112 F.3d 175, 177 (5th Cir. 1997). Citing *Williams*, Allstate contends it "details the who, what, when, and where of the fraud." Dkt. 21 at 12. But *Williams* requires Allstate to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, **and explain why the statements were fraudulent.**" *Williams*, 112 F.3d at 177-78 (citation omitted) (emphasis added); *see also id.* at 179 (requiring the "who, what, when, where, **and how**") (emphasis added). Lumping defendants together and failing to "identify specific statements made by any of the defendants is fatal," *id.* at 182. A plaintiff must "enlighten each defendant as to his or her particular part in the alleged fraud." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004).

7. First, Allstate fails to plausibly allege ***what*** material misrepresentations were made. Its comparison shows the radiology reports and a later "reread" using the word "degenerative" described the same objective findings (e.g., small osteophyte/disc protrusions) in different terminology - not fabricated findings or chronic conditions recast as acute traumatic injuries. Dkt. 1, ¶ 297; Dkt. 15, ¶ 30. Choosing one accurate technical term over another to describe the same objective finding is at most a stylistic preference, not a "false" statement actionable in fraud. Nor is a radiologist's use of standard medical terminology to describe an objective finding a false statement just because another might use different terms to describe the same underlying abnormality. Moreover, the claimants' own treating providers – not the Teleradiologists - decide

what treatment to recommend, and the more specific degenerative changes are noted in a report, the better equipped the provider is to direct treatment. This destroys the plausibility of Allstate's theory since a thorough description of degenerative findings gives its adjusters and attorneys more, not less, with which to argue a claimant's condition is degenerative.

8. Second, Allstate fails to differentiate among the four individuals and entity defendants. It identifies no Rule 9(b)-compliant misrepresentation, as its allegations of ***who*** are pled collectively against "the Oneto Defendants" without identifying who made a misrepresentation, or knew what and when. "It is not enough for the plaintiff to attribute vaguely the alleged fraudulent activity to the 'defendants' collectively." *FMC Intern. A.G. v. ABB Lummus Glob., Inc.*, No. CIV. A. H-04-3896, 2006 WL 213948, at *4 (S.D. Tex. Jan. 25, 2006).

9. Third, Allstate claims it "alleges the how" in the response to Khit Defendants' 12(b) motion, Dkt. 19-17, and the "How" is also covered in response to the Resendez 12(b) motion. Dkt. 20-20. But Allstate makes no effort to demonstrate ***why*** or ***how*** the alleged "technical jargon" is fraudulent. Allstate asks the Court to infer fraud because the "obscure technical terms" used to add detailed degenerative descriptions are unfamiliar to claims adjusters. Dkt. 1, ¶ 127; Dkt. 21 at 1.

10. Yet Allstate cites no authority for its theory and never identifies which terms in the reports so confused its adjusters and experts as to constitute fraud. To describe anatomy and pathology with precision, radiologists use standardized nomenclature to communicate – clearly not only among radiologists and clinicians, but across the broader community using imaging reports, ***including patients, insurers, and attorneys***.[1] Allstate's own confusion cannot be recast as

[1] David F. Fardon et al., *Lumbar Disc Nomenclature: Version 2.0: Recommendations of the Combined Task Forces of the North American Spine Society, the American Society of Spine Radiology and the American Society of Neuroradiology*, 14 Spine J. 2525, 2525-27 (2014).

misrepresentation; standard terms are not deceptive just because non-radiologists are not familiar.

11. The Complaint alleges, "The term 'degenerative' and other common terminology like 'disc desiccation' and 'loss of disc height' typically used by radiologists - and understood by most insurance adjusters and defense attorneys" were omitted, creating false or fraudulent impressions. Dkt. 1, ¶ 127. The reports undercut this theory, showing the Teleradiologists did include "loss disc height" – one of the terms Allstate relies on to allege fraud:

**FINDINGS:**
Vertebrae: Vertebral body heights are preserved. Normal vertebral bodies and posterior elements. There is no evidence of fracture. Bone marrow Modic type 1 changes in the L5/S1 encompassing endplates.
Vertebral alignment: No spondylolisthesis. There is preservation of the normal lumbar lordosis.
Axial levels demonstrate:
L1/2: Normal disc height and morphology. Normal central canal, lateral recesses, and neuroforamina.
L2/3: Normal disc height and morphology. Normal central canal, lateral recesses, and neuroforamina.
L3/4: Normal disc height and morphology. Normal central canal, lateral recesses, and neuroforamina.
L4/5: Normal disc height. There is a broad-based 2 mm disc herniation, mild hypertrophy of the facets, and 3 mm thick ligamentum flavum hypertrophy. The combination of findings results in mild narrowing of the central canal and both neural foramina.
L5/S1: Loss disc height and morphology. There is a broad-based 4 mm disc herniation with a central annular tear, mild hypertrophy of the facets, and 3 mm thick ligamentum flavum hypertrophy. The combination of findings results in mild narrowing of the central canal and the right neural foramen. The left neural foramen is moderately narrowed.
Cord: Normal position and signal intensity of the conus medullaris.
Soft tissues: Posterior lumbar subcutaneous edema.

Dkt. 1-2 at 40. The contradiction extends beyond the phrase "loss disc height" as the reports document other degenerative findings, from which any reviewer could identify and evaluate.

12. Allstate relies on *Allstate Indem. Co. v. Bhagat*, 164 F.4th 426, 434 (5th Cir. 2026), because its appendices list claim numbers, service dates, billed and paid amounts, and settlement-check dates. Dkt. 21 at 17-18. That data may identify transactions, but not what statement in a particular QI&I report was false, who made it, or why the interpretation was misleading. Nor does the volume of Insight-related matters cure the defect because multiplying ordinary interpretations cannot make them predicates. Allstate's "jargon"-based allegations therefore cannot be accepted as well-pleaded facts, and there is no other allegation of false or fraudulent conduct by any Teleradiologist in the Complaint.

**C. <u>The Teleradiologists Did Not Operate or Manage the Enterprise Under *Reves*.</u>**

13. Allstate argues *Reves* is satisfied because the Teleradiologists "knowingly received and followed instructions designed to perpetrate fraud," issued reports it labels the scheme's "linchpin," and because Dr. Khit allegedly testified Dr. Miguel Oneto helped him determine Insight's MRI charges. Dkt. 21 at 15-16. Awareness that reports might reach demand packages does not plausibly allege direction of the enterprise's affairs. Allstate simply concludes the "Oneto Defendants knew their reports would be included in settlement demand packages sent by personal injury attorneys." Dkt. 21 at 5. Conclusory allegations support no inference of fraudulent intent.

14. Now, Allstate claims "when subpoenaed in the underlying cases their records were supposed to support, the Oneto Defendants withheld documents and dodged testimony." Dkt. 21 at 6 (citing Dkt. 1, ¶¶ 221-23). But those paragraphs reference only a separate defendant, Sanniche Quiacoe, M.D., and the Complaint nowhere alleges any affiliation with him. The only other evasion allegation - that the Teleradiologists "refused to produce the Insight-QI&I contract and other critical documents, including the complete facility note, claiming 'trade secrets'" - also misstates the record. Dkt. 21 at 10. Two Teleradiologists were deposed by Allstate attorneys, Dr. Fan in 2024 and Dr. Oneto in 2025. 15-1 at 2; 15-2 at 2. Allstate asked Dr. Fan only a few questions about her findings before turning to the Khits, Insight, and billing practices. Dkt. 15-1 at 5, 9, 12. Dr. Fan testified she had no knowledge of Insight's billing practices and was neither involved in, nor aware of, the QI&I and Insight contractual relationship. *Id.* After Dr. Fan's deposition, it was evident Allstate and its counsel[2] were not defending the case but building one against the Teleradiologists. During Dr. Oneto's subsequent personal and corporate representative QI&I

[2] The depositions were taken by the Knox Ricksen LLP firm, including the same attorney representing Allstate in this lawsuit. Dkt. 15-1 at 41:20-23.

deposition, Allstate showed little interest in Dr. Oneto's imaging readings in the underlying case. Instead, the focus was on the Khits, Insight and that company's billing and collections practices, on the corporate structure and business of QI&I, the Teleradiology Agreement with Insight, and why the contract with Insight was terminated. Dkt. 15-2 at 5-24, 30-36, 38, 43-44. Dr. Fan and Dr. Oneto did not withhold any responsive and potentially discoverable records, but did avail themselves of their legal rights in resisting fraudulent subpoenas and irrelevant discovery requests to prevent the group from being named as defendants in a frivolous lawsuit. Accordingly, the Court should find that objecting to and resisting such harassing questioning from Allstate's attorneys about irrelevant topics does not support an inference that the Teleradiologists knew of the alleged enterprise's fraud or attempted to conceal their role. Dkt. 21 at 10.

15. Receiving payment for services rendered does not show a defendant "operated or managed" the scheme. *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 551 (5th Cir. 2012). 18 U.S.C. § 1962(c) requires "some part in directing" enterprise affairs, not merely one's own. *Reves v. Ernst & Young*, 507 U.S. 170, 179, 185 (1993). A vendor following customer formatting preferences provides only "ordinary professional assistance," insufficient even where the assistance is strategic advice. *See In re MasterCard Int'l Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468, 489-90 (E.D. La. 2001). Treating fee negotiation as "management" converts every contractor to a RICO enterprise a RICO defendant. *In re MasterCard*, 132 F. Supp. 2d at 487. Having a business relationship with a RICO enterprise does not constitute operation and management of its affairs. *Compass Bank v. Villarreal,* No. 10-8, 2011 WL 1740270, at *13 (S.D. Tex. May 5, 2011). Nor was QI&I's business centered on Insight or letter of protection (LOP) matters. Insight represented less than five percent of QI&I's interpretation volume; the vast majority of QI&I's practice involved non-LOP patients and routine diagnostic imaging. The same professional standards and

reporting practices were applied to every interpretation, regardless of the referral source or payer.

16. Allstate cannot distinguish *Benhamou*, wherein RICO claims against a similarly passive provider were dismissed for failure to allege his role and conscious participation. *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 659 (S.D. Tex. 2016). Allstate's responses to other defendants' Rule 12(b) motions confirm as much, alleging the Khits "controlled the reporting and billing procedures" and describing Resendez as a "central" supervisor who negotiated the QI&I contract; the radiologists just "followed" directions. Dkt. 19 at 7, 15-16; Dkt. 20 at 11, 14, 16.

**D. <u>Allstate Fails to Plead a Mail-Fraud Predicate With Particularity.</u>**

17. Allstate does not dispute that no Teleradiologist mailed anything to, billed, or communicated with Allstate or claimants' counsel; it instead relies instead on foreseeable use of the mails. But foreseeability does not cure the absence of any particularized allegation that the Teleradiologists knew their reports would be forwarded into demand packages mailed to Allstate. The pleaded facts – a non-exclusive contract with Insight, no knowledge of which work product was forwarded or to whom, and no role in marketing or billing – negate rather than support the required inference of fraudulent intent. The paragraphs cited for the Teleradiologists' supposed intent that Allstate will rely on their reports refer only to unidentified "Defendants" who received a portion of settlement funds. Dkt. 1, ¶¶ 420, 426. Nor does the assertion they "withheld documents and dodged testimony" in unrelated litigation supply the missing scienter. Dkt. 21 at 6, 10.

18. A RICO mail fraud averment "must . . . provide some factual basis for conclusory allegations of intent," which must "give rise to a strong inference of fraudulent intent." *Benhamou*, 190 F. Supp. 3d at 658. A defendant must have acted "knowingly with the specific intent to deceive for the purpose of causing pecuniary loss to another or bringing about some financial gain to himself." *Ranieri v. AdvoCare Int'l, L.P.*, 336 F. Supp. 3d 701, 715 (N.D. Tex. 2018) (citation

omitted). As in *Ranieri*, Allstate's allegations fail because it never alleges how a Teleradiologist learned of the scheme's fraudulent nature, or how general awareness became specific intent to allege deception. 336 F. Supp. 3d at 718-19. Allstate pleads no facts showing the Teleradiologists knew reports would be mailed with demands, let alone that they intended those mailings.

**E. Allstate Fails to Plead Agreement or Knowing Participation in a RICO Conspiracy.**

19. The Complaint does not plausibly allege an agreement by the Teleradiologists to further a RICO violation, as 18 U.S.C. § 1962(d) requires. Insight's contract with QI&I, the notation that Insight studies were "liability cases," and QI&I's request for detailed reporting are ordinary incidents of a professional-services relationship, not a meeting of the minds. Again, Allstate's evidence of agreement is the facility note contradicting its own theory; an instruction requiring fuller descriptions of degenerative findings is not an agreement to conceal that pathology. Dkt. 15-2. QI&I was paid fixed fees unrelated to diagnosis, treatment, or settlement outcome; the Teleradiologists did not order imaging, recommend treatment, prepare demands, bill Allstate, or control Insight's charges. Dkt. 15, ¶ 16 (citing Dkt. 15-2 at 79:3-19). Calling ordinary radiology services "knowing participation" just restates the conclusion the Complaint must support.

**F. Allstate's State-Law Claims Are Derivative and Independently Deficient.**

20. Allstate's state-law fraud and conspiracy claims fail for the same defects as its RICO claims. The misrepresentation attributed to the Teleradiologists – their reports "accurately represented conditions consistent with traumatic injuries" – is not plausibly false or made with intent that Allstate rely on it. Dkt. 21 at 21. The conspiracy accusations are likewise generic, asserting only a "meeting of the minds." Dkt. 1, ¶¶ 424-25. Dismissal of the fraud claim requires dismissal of the derivative conspiracy claim. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).

21. As to unjust enrichment and money had and received, Allstate concedes QI&I was

paid a flat per-study fee by Insight under an arm's-length contract – funds not traceable to Allstate. The Response contends direct payment is unnecessary because QI&I received an indirect benefit from settlements Allstate paid. Dkt. 21 at 22-23. But tracing that fee through the transactions Allstate's theory requires (Allstate → claimant's counsel → Khit entity → Insight → QI&I) is too attenuated to plead a benefit "obtained from" Allstate by fraud or bad-faith retention, and Allstate cites no authority otherwise. QI&I's compensation remained the same regardless of diagnosis, treatment, settlement value, or whether Allstate paid anything, and Allstate does not allege the fee was unreasonable or contingent on settlement. Recasting an ordinary contract fee as an "indirect benefit" does not plead QI&I obtained money from Allstate by fraud or accepted money in bad faith. Allstate does not plausibly allege this fee in equity and good conscience belongs to Allstate.

### G. <u>Decline Supplemental Jurisdiction and Deny Leave to Amend.</u>

22. If the Court dismisses Allstate's federal claims against the Teleradiologists, the Fifth Circuit's general rule favors declining supplemental jurisdiction over the remaining state-law claims. *Enochs v. Lampasas Cty.*, 641 F.3d 155, 163 (5th Cir. 2011). Allstate's only argument for retention is judicial economy - not, by itself, a compelling reason to depart from the general rule, this early in the case. Allstate seeks "leave to amend if the Court identifies any deficiency." Dkt. 21 at 25. Allstate tendered no proposed amended complaint and identified no new facts, and leave to amend should not be granted because doing so would be futile given the fundamental defects of its core fraud claims. *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 232 (5th Cir. 2022) (holding denial of leave to amend not an abuse of discretion where plaintiff neither proposed nor specified amendments and only sought leave if the pleadings were deficient).

## II. CONCLUSION

For these reasons, all claims against the Teleradiologists should be dismissed with prejudice.

DATE: August 14, 2026

Respectfully submitted,

By: ______________________________
Ricardo G. Cedillo
Texas Bar No. 04043600
Joseph L. Korbel
Texas Bar No. 24127174

**DAVIS, CEDILLO & MENDOZA, INC.**
755 E. Mulberry Ave., Ste. 250
San Antonio, Texas 78212
Telephone: 210.822.6666
Facsimile: 210.660.3795
Email: rcedillo@lawdcm.com
Email: jkorbel@lawdcm.com
Email: zgilbert@lawdcm.com

**ATTORNEYS FOR DEFENDANTS JULIETA ONETO, MD., MIGUEL ONETO, MD, MIGUEL ONETO MD., P.A., D/B/A QI & INTERVENTIONS AND SUSAN FAN, M.D.**

**CERTIFICATE OF SERVICE**

I certify that on this 14th day of August 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the parties on record.

______________________________
JOSEPH L. KORBEL