**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, and ALLSTATE COUNTY MUTUAL INSURANCE COMPANY,** *Plaintiffs,* | § § § § § § § § § | |
| **v.** | § | **Civil Action No. 1:26-CV-543-ADA-M** |
| | § | |
| **KHIT CHIROPRACTIC AND REHABILITATION, PLLC, KHIT & ASSOCIATES, PLLC D/B/A KHIT CHIROPRACTIC & WELLNESS CENTER, SKAK INVESTMENTS, LLC D/B/A INSIGHT DIAGNOSTIC AND IMAGING CENTER, LLC, INSIGHT IMAGING CENTER, LLC, KAY MEDICAL CENTER, PLLC, SPINAL DECOMPRESSION AND REMODELING CLINIC, PLLC, ELKAY ENTERPRISES, LLC D/B/A ELKAY TRANSPORT, IMPACT PROFESSIONAL SERVICES, LLC, KHIT PROPERTY MANAGEMENT, LLC, MIGUEL ONETO, M.D., P.A. D/B/A QI & INTERVENTIONS, LUIS KHIT, D.C., ALEJANDRA KHIT, D.C., ANNA GITTINS, ARTURO RESENDEZ, SUSAN FAN, M.D., MIGUEL ONETO, M.D., JULIETA ONETO, M.D., SANNICHIE QUAICOE, M.D., WILLIAM DONOVAN, M.D., JOSE NADAL, D.C., LIBRADO TORRES, D.C., JOHN GLADE, D.C., LIZ MOLINA, D.C., REYNALDO AMADOR, D.C., DEBBIE RIVERA, D.C., AND JONATHAN HERNANDEZ, D.C.,** *Defendants.* | § § § § § § § § § § § § § § § § § § § § § § § § § § | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' OPPOSED MOTION FOR LEAVE TO FILE SUR-REPLIES**

The Oneto Defendants file this Response in Opposition to *Plaintiff's Opposed Motion for Leave to File Surreplies in Opposition to Defendants' Motion to Dismiss* (Dkt. 26) (the "Motion for Leave") and in support thereof would respectfully show the Court as follows:

## I. INTRODUCTION

1. Allstate claims Insight contracted with Defendant Miguel Oneto, M.D., P.A. d/b/a QI & Interventions ("QI&I")[1] and other radiology groups for remote interpretation of x-rays, CT, and MRI scans. *See* ECF No. 1 at 121; 389(1)-(m). Allstate[2] asks the Court to equate the Oneto Defendants' detailed reporting with "technical jargon" and "obscure technical terms." Dkt. 21 at 6, 12,19. The Motion for Leave and proposed sur-reply asks the Court to do the same thing again, this time by recasting the Oneto Defendants' answers to Allstate's own Response as new matter.

2. Each of the five instances where Allstate complains the Reply raises a "new matter" answers a point from Allstate's Response. The Reply's description of QI&I's practice—that Insight accounted for less than five percent of its interpretation volume and that the same standards governed every study—responds to Allstate's assertion that Defendants had a "direct financial interest in claim outcomes." Dkt. 21 at 8. The *Lumbar Disc Nomenclature* article outlining common terms used by radiologists answers the Response's charge that the Oneto Defendants "avoided common radiological terminology." Dkt. 21 at 9–10. The Reply's discussion of detailed

[1] Defendants Susan Fan, M.D., Julieta Oneto, M.D., Miguel Oneto, M.D., and QI&I are collectively, the "Oneto Defendants."

[2] Plaintiffs Allstate Insurance Company, Allstate Fire & Casualty Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, and Allstate County Mutual Insurance Company (collectively, "Allstate").

reporting draws a competing inference from the allegations Allstate pleaded rather than advancing a new causation theory, and *Ranieri* supplies the Rule 9(b) scienter standard governing the intent allegations Allstate defended in its Response. Dkt. 21 at 15. Futility is argued only because Allstate first requested leave to amend in its Response. Dkt. 21 at 25. The Court should deny Allstate's motion for leave because the proposed sur-reply identifies no new matter; it simply restates the Response and seeks the last word.

## II. LEGAL STANDARD

3. "A party may file a reply in support of a motion. Absent leave of court, no further submissions on the motion are allowed." Court Rule CV-7(e)(1). Neither the Federal Rules of Civil Procedure nor the Local Rules for the Western District of Texas provide for a right to file a sur-reply, and such filings "are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter." *Tijerina-Salazar v. Venegas*, No. PE:19-CV-00074-DC-DF, 2022 WL 1750474, at *2 (W.D. Tex. May 31, 2022) (citation omitted); *accord Warrior Energy Servs. Corp. v. ATP Titan M/V*, 551 F. App'x 749, 751 n.2 (5th Cir. 2014) ("[S]urreplies are heavily disfavored by courts."). A motion for leave to file a sur-reply may be granted if the party requesting leave demonstrates exceptional or extraordinary circumstances. *Weems v. Hodnett*, No. 10-CV-1452, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011).

4. "Where a surreply is allowed, it is 'limited to addressing only new arguments raised for the first time by the opposing party in their reply briefing and not included in the original motion.'" *Tijerina-Salazar*, 2022 WL 1750474, at *2 (quoting *Branch v. CEMEX, Inc.*, No. H-11-1953, 2012 WL 2357280, at *9 (S.D. Tex. June 20, 2012), *aff'd*, 517 F. App'x 276 (5th Cir. 2013)); *accord Dillard v. Internacional Realty Mgmt., LLC*, No. 1:22-CV-01215-DH, 2023 WL 7394416,

at *1 (W.D. Tex. Nov. 8, 2023) (same). Leave to file a sur-reply is unwarranted, however, where the proposed sur-reply merely restates the arguments made in the party's initial response. *See, e.g., Williams v. Aviall Serv. Inc.*, 76 F. App'x 534, 535 (5th Cir. 2003) (affirming the denial of motion for leave to file a sur-reply because the sur-reply did not include new arguments or evidence); *Berkman v. City of Keene*, No. 3:10-cv-2378-B, 2011 WL 3268214, at *5 (N.D. Tex. July 29, 2011) (denying motion for leave to file a sur-reply because the sur-reply involved no new issues).

## III. ARGUMENT

5. Allstate has asked the Court for leave to file a sur-reply because it claims the Oneto Defendants raised new arguments, authorities, and extrinsic facts in their Reply. Dkt. 26 at 1. The Court should not authorize a sur-reply here because (i) the Oneto Defendants' Reply does not introduces any new arguments, authority, or evidence beyond what fairly responds to Allstate's opposition in its Response, and (ii) Allstate's proposed sur-reply merely restates the same arguments and still does not explain why granting leave to amend its claims is not futile.

6. Each point Allstate identifies from the Oneto Defendants' Reply responds to Allstate's Response and stays within the proper scope of a reply. Allstate first challenges two statements in the Reply: that Insight represented "less than five percent of QI&I's interpretation volume" and that QI&I applied "the same professional standards and reporting practices" practice-wide. Dkt. 26 at 2. The Oneto Defendants' Motion to Dismiss first addressed the limited, non-exclusive scope of the relationship between QI&I and Insight. Dkt. 15 at ¶¶15-16; 31-34. It also confirmed, "payments to QI & I from Insight under the Contract were not contingent upon payment from Allstate to the claimants' attorneys or otherwise dependent on Insight's ability to collect fees." Dkt. 15 ¶ 34 (citing the Insight-QI&I Contract, Dkt. 15-3 at 3).

7. Additionally, records submitted with the Motion to Dismiss already support that Insight represented less than five percent of QI&I's interpretation business: Dr. Miguel Oneto's deposition confirms that in July of 2023, "between 3 and 4 percent" of QI&I's business was evaluating images received from Insight. Dkt. 15-2 at 22 (50:13-16). The Oneto Defendants attached to their Motion to Dismiss selected pages from transcripts of testimony by Defendant Dr. Fan (Dkt. 15-1) and Defendant Dr. Oneto (Dkt 15-2) referenced in the Complaint along with the Contract (Dkt. 15-3) and Facility Note (Dkt. 15-4) referenced in the Complaint – but not attached by Allstate.[3] The Motion to Dismiss and Reply provides the Court with authority allowing it to consider these exhibits which are central to deciding the motion without requiring conversion to a motion for summary judgment. *See* Dkt. 15 at 8-10; Dkt. 24 at ¶¶ 3-5.

8. The Response nonetheless grouped the Oneto Defendants with the remaining Defendants, asserting that "[t]hese entities served almost exclusively personal injury patients treating under letters of protection ('LOPs'), giving Defendants a direct financial interest in claim outcomes." Dkt. 21 at 8 (citing Dkt. 1 ¶¶ 9, 134–36). It was therefore necessary for the Reply to clarify why the Oneto Defendants neither treated personal injury patients exclusively nor held a direct financial interest in claim outcomes:

> Nor was QI&I's business centered on Insight or letter of protection (LOP) matters. Insight represented less than five percent of QI&I's interpretation volume; the vast majority of QI&I's practice involved non-LOP patients and routine diagnostic imaging. The same professional standards and reporting practices were applied to

[3] *See,* e.g., Dkt. 1 at ¶ 125 (referencing "a deposition of Dr. Fan in 2024"); ¶ 127 ("Miguel Oneto, M.D. testified in June of 2025 ... "); at ¶ 121 ("Khit contracted with [Quality Imaging] to evaluate x-ray, CT, and MRI scans, and issue radiology reports under Insight's name[.]"); at ¶ 208, n. 32 (referring to Quality Imaging's Contract and Invoices, attached to the Petition filed in *Miguel Oneto, MD, PA v. South Texas Clinic for Pain Management, PA*, Cause No. CL-23-4370-1 in the Hidalgo County Court at Law); and at ¶ 389 (l) (referencing contract between Insight and Quality Imaging "to provide teleradiology services for Insight during the period at issue.");

every interpretation, regardless of the referral source or payer.

Dkt. 24 at 14. As such, the Reply answers Allstate's allegation that the Oneto Defendants participated in the operation or management of the alleged RICO enterprise, and its allegation that the "Oneto Defendants knew their reports would be included in settlement demand packages sent by personal injury attorneys." Dkt. 21 at 10 (citing Dkt. 1 ¶¶ 365–66).

9. Allstate next objects that the Reply improperly "cites Fardon et al., *Lumbar Disc Nomenclature: Version 2.0*, 14 Spine J. 2525 (2014), claiming radiology terminology is standardized and understandable to insurers," and that "[t]he article is not in the record and cannot be judicially noticed for its truth." Dkt. 26 at 3 (citing Dkt. 24 at 5 & n.1). The article[4] responds directly to Allstate's assertion that QI&I radiologists "prepared imaging reports on Insight's letterhead using templates that avoided common radiological terminology." Dkt. 21 at 9–10 (citing Dkt. 1 ¶¶ 174, 209); and at 19 ("The question is not whether the reports were detailed, but whether they concealed degenerative changes by sidestepping widely understood terminology."). Answering Allstate's characterization of radiological nomenclature with the published nomenclature is not new evidence, and the Oneto Defendants respectfully request that the Court take judicial notice of the article's existence and what it contains: widely understood terminology.

10. A court "may judicially notice a fact that is not subject to reasonable dispute

---

[4] David F. Fardon et al., *Lumbar Disc Nomenclature: Version 2.0: Recommendations of the Combined Task Forces of the North American Spine Society, the American Society of Spine Radiology and the American Society of Neuroradiology*, 14 Spine J. 2525, 2525–27 (2014). Though not included in the Motion to Dismiss, the abstract of this publication is available at National Institute of Health Database, PubMed at https://pubmed.ncbi.nlm.nih.gov/24768732/ and the full text of the publication is available at https://www.thespinejournalonline.com/article/S1529-9430(14)00409-4/fulltext. These two websites are publicly available, and for convenience a copy of the full publication is also attached as Exhibit A.

because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(b)(2) and 201(c)(2). The Court may do so "at any stage of the proceeding." Fed. R. Evid. 201(d); *see Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (approving judicial notice of publicly available documents in ruling on a Rule 12(b)(6) motion). Judicial notice may be taken "as to the existence of documents . . . without inquiring whether the information contained in them is true." *In re James*, 300 B.R. 890, 895 (Bankr. W.D. Tex. 2003); *accord Brown v. Bridges*, No. 3:12-CV-4947-P, 2016 WL 3660666, at *2 (N.D. Tex. Jan. 26, 2016), *aff'd*, 692 F. App'x 215 (5th Cir. 2017). The Fifth Circuit has also allowed the judicial notice of public disclosure documents that the defendant filed with the SEC. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996)).

11. The Oneto Defendants do not attempt to introduce disputed facts through judicial notice at the dismissal stage, nor do they ask the Court to take judicial notice of the article for its truth, as Allstate suggests. Dkt. 26 at 3. The Oneto Defendants ask the Court to notice no more than that: (i) the *Lumbar Disc Nomenclature* article exists; (ii) it was published in 2014, well before the conduct Allstate alleges here beginning in mid-2018 (Dkt. 21 at 16); (iii) it was created by "the Combined Task Forces of the North American Spine Society, the American Society of Spine Radiology and the American Society of Neuroradiology"; and (iv) it contains standardized radiology terms. Each is capable of accurate and ready determination from a source whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2). Indeed, the Southern District of New York used the same seminal article to define terminology used in lumbar imaging. *See Mercado v. Colvin*, No. 15 CIV. 2283 (JCF), 2016 WL 3866587, at *2, n 2 (S.D.N.Y. July 13,

2016) ("Disc-osteophyte complex refers to intervertebral disc displacement associated with calcific ridges or ossification. David F. Fardon et al., Lumbar disc nomenclature: version 2.0, 14 Spine Journal 2525, 2539 (2014)"). Furthermore, in *Young v. UOP LLC*, the district court overruled hearsay objections to articles from National Institute of Health and other federal government websites listing potential medication side effects "because courts routinely take judicial notice of federal government websites, and the articles provided by Plaintiff are not uncorroborated internet articles." *Young v. UOP LLC*, No. CV 21-282-SDD-EWD, 2024 WL 288985, at *16 (M.D. La. Jan. 25, 2024). Even if the article itself were not judicially noticeable, the underlying point—that the Oneto Defendants used existing standardized radiological nomenclature to describe imaging findings—requires no sur-reply to address.

12. Allstate next claims the Reply "advances a new causation theory" by arguing the detailed reports help insurers rather than harm them. Dkt. 26 at 3. This argument responds directly to Allstate's theory that Defendants omitted the word "degenerative" and used "obscure technical jargon" to conceal age-related findings. Dkt. 21 at 6, 9, 16, 18, 21. The Reply addressed Allstate's theory head-on and offered a competing interpretation of the same evidence. A sur-reply is not warranted simply because Allstate disagrees with the Oneto Defendants' causation theory.

13. Next, Allstate argues the Reply invokes *Ranieri v. AdvoCare Int'l, L.P.*, 336 F.Supp.3d 701, 715, 718-19 (N.D. Tex. 2018), to demand a "strong inference" bridging general awareness and specific intent—a standard it says was not raised before. Dkt. 26 at 3 (citing Dkt. 24 at ¶ 18). The Oneto Defendants' Motion to Dismiss cited *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 655 (S.D. Tex. 2016), stating that simply contributing to the enterprise "with the knowledge of or willful disregard" for the other defendants' supposed criminal activity will not

constitute operation or management of a RICO enterprise's affairs. Dkt. 15 at ¶ 13. In its Response, Allstate repeatedly invoked Rule 9(b)'s intent requirement "so long as the facts support a plausible inference of fraudulent intent." Dkt. 21 at 14, 18. Allstate's Response also attempts to distinguish *Benhamou* by claiming "the Complaint alleges the Oneto Defendants knew the purpose of the reporting instructions, followed them, and generated reports that advanced the alleged fraud. Those allegations plausibly show participation in the enterprise's affairs." Dkt. 21 at 17. As an example of the heightened Rule 9(b) pleading standards for fraudulent intent, the Reply cited *Ranieri* to answer Allstate's contention that the Oneto Defendants "allegedly helped conceal degenerative findings through coordinated reporting practices." Dkt. 21 at 15-16.

14. Moreover, in the sentence immediately before the *Ranieri* citation, the Reply cites *Benhamou* for the standard for pleading fraudulent intent, stating: "A RICO mail fraud averment 'must . . . provide some factual basis for conclusory allegations of intent,' which must 'give rise to a strong inference of fraudulent intent.' *Benhamou*, 190 F. Supp. 3d at 658." Citing governing authority for a standard the Response itself placed at issue is not "sandbagging" as Allstate had full notice and opportunity to anticipate the Oneto Defendants' position that the Complaint does not plausibly allege fraudulent intent on their part.

15. Finally, Allstate complains that the Reply cites *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 232 (5th Cir. 2022) to argue futility bars leave to amend. Dkt. 26 at 3. However, it was Allstate that first requested leave to amend in its Response, if the Court "grants any portion of the motion." Dkt. 21 at 25. Thus, the Oneto Defendants are entitled to argue the Court should not give Allstate leave to amend because doing so would be futile.

16. Since Allstate made only a bare, general request without a proposed amended

pleading, the futility argument is not only responsive but is actually compelled by the nature of the request itself, since a bare-bones request is futile when it fails to apprise the court of facts to be pleaded. *Porretto v. City of Galveston Park Bd. of Trs.*, 113 F.4th 469, 490 (5th Cir. 2024) (citations omitted) (holding the district court did not abuse its discretion in refusing to grant leave to amend under these circumstances, since a bare-bones request remains futile when it fails to apprise the district court of the facts that the plaintiff would plead in an amended complaint). A reply that answers a request first made in the response raises nothing new. Allstate already had the opportunity to explain why the proposed amendment would not be futile in its Response when requesting leave to amend, and should anticipate that the movant will argue futility in the reply.

17. Finally, the proposed sur-reply constitutes an impermissible effort to get the last word, not a legitimate response to new arguments raised in the Oneto Defendants' Reply brief. The proposed sur-reply repeats the Response's assertion that the Oneto Defendants substituted obscure technical language for "disc desiccation" and "loss of disc height," and it restates the Response's Rule 9(b) arguments on intent. *Compare* Dkt. 26-1 at 3–4, *with* Dkt. 21 at 9, 15-16, 22. Allstate had full notice of the Oneto Defendants' positions from the Motion to Dismiss and attempted to answered them at length in its Response. Still, Allstate has not explained how allowing it to amend its pleadings will cure the defects in the claims Allstate has alleged against the Oneto Defendants, nor has it presented a proposed amended complaint. Accordingly, leave to file a sur-reply is unwarranted because the sur-reply Allstate proposes merely restates the arguments made in the party's initial response. *See Williams*, 76 F. App'x at 535.

18. The sur-reply Allstate proposes also argues, "the Court cannot consider the underlying depositions for the truth of their content at this stage." Dkt. 26-1 at 3. Yet on the very

next page, Allstate relies on those same depositions as substantive proof of scienter: Dr. Oneto was told all Insight studies were "liability cases," his "admit[ted]" concession that the reason a study was ordered should not affect its interpretation, and his testimony that he authored the facility note. Dkt. 26-1 at 4. Allstate offers these pleaded deposition answers for their truth: the Complaint lists depositions and their dates, and quotes the transcript verbatim. Dkt. 1 at ¶¶ 125-127. Allstate's Response did the same, and went further, citing the complete facility note and the Insight-QI&I contract as affirmative proof of concealment. Dkt. 21 at 4, 9, 10, 15-16.

19. Having elicited this testimony, pleaded from it, and argued from it, Allstate cannot plausibly now claim surprise. If the Court "cannot consider the underlying depositions for the truth of their content at this stage," Dkt. 26-1 at 3, then the principal factual basis of Allstate's fraud theory is not before the Court either. Allstate would be left with the appendices which, as the Reply explains, identify transactions but do not identify any false statement, its speaker, or why it was false. Dkt. 24 ¶ 12. Allstate cannot invoke a rule that excludes the very evidence on which its fraud theory depends while simultaneously arguing that the same evidence defeats the Motion.

## III. CONCLUSION

For these reasons, the Oneto Defendants respectfully request that the Court deny *Plaintiffs' Opposed Motion for Leave to File Surreplies in Opposition to Defendants' Motions to Dismiss* as to the Oneto Defendants, take judicial notice of the *Lumbar Disc Nomenclature* article as set out above, and grant all other relief to which they are entitled.

DATE: September 4, 2026

Respectfully submitted,

By: ______________________
Ricardo G. Cedillo
Texas Bar No. 04043600
Joseph L. Korbel
Texas Bar No. 24127174

**DAVIS, CEDILLO & MENDOZA, INC.**
755 E. Mulberry Ave., Ste. 250
San Antonio, Texas 78212
Telephone: 210.822.6666
Facsimile: 210.660.3795
Email: rcedillo@lawdcm.com
Email: jkorbel@lawdcm.com

**ATTORNEYS FOR DEFENDANTS JULIETA ONETO, MD., MIGUEL ONETO, MD, MIGUEL ONETO MD., P.A., D/B/A QI & INTERVENTIONS AND SUSAN FAN, M.D.**

## CERTIFICATE OF SERVICE

I certify that on this 4th day of September, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the parties on record.

______________________
RICARDO G. CEDILLO